Barbour, Sheriff, &c., v. Louisville Board of Trade.

CASE 103—REVENUE, CONSTITUTION—APRIL 23, 1885.

## Barbour, Sheriff, &c., v. Louisville Board of Trade.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The act of the General Assembly, approved April 23, 1873, providing that "any real estate held by the Louisville Board of Trade, in the city of Louisville, shall be exempted from taxation," etc., is unconstitutional.

2. It is in violation of the first section of the thirteenth article of the Constitution, which provides that "no man or set of men are entitled to exclusive separate public emoluments or privileges from the community, but in consideration of public services."

3. In disseminating commercial information in the city of Louisville, or even through the State of Kentucky, appellees do not render any such public service to the Commonwealth as is contemplated by the Constitution.

RUSSELL & HELM FOR APPELLANTS.

1. The Legislature can not levy taxes except it be for a public purpose.

2. Taxation in aid of the Louisville Board of Trade is not for a public purpose.

3. The act of the General Assembly, approved April 23, 1873, relieving the Louisville Board of Trade from taxation, is unconstitutional and void. (Acts of 1881, volume 2, page 803; General Statutes, section 2, article 7, chapter 92, page 726; Field v. Louisville Building Association, MS. opinion, September 30, 1876; Pennington v. Woolfolk, 79

Ky., 16; City of Louisville v. Cochran Ky. Law Rep. and J., May, 1884, page 833; Sutton's Hrs. v. City of Louisville, 5 Dana, 31; Lexington v. McQuillan's Hrs., 9 Dana, 516; Gordon v. Winchester Building Association, 12 Bush, 110; Brewer Brick Company v. Inhabitants of Brewer, 62 Maine, 72; Commonwealth v. First National Bank of Louisville, 4 Bush, 98; Burroughs on Taxation, page 1; Cooley on Taxation, page 1; Desty on Taxation, page 50; Blackwell on Tax Titles, page 3; Hanson v. Vernon 27 Iowa, 28; Lowell v. City of Boston, 111 Mass., 454; National Bank v. City of Iola, 9 Kan., 689; Allen v. Inhabitants of Jay, 60 Maine, 124; Weeks v. City of Milwaukee. 10 Wis., 242; People v. Salem, 20 Mich., 452; Curtis v. Whipple 24 Wis., 353; Memphis Freight Company v. Mayor of Memphis, 4 Cold., 419; State v. Osawkee Township, 14 Kan., 418; Sharpless v. Mayor of Philadelphia, 21 Pa. St., 147; Norwich Gas-light Company v. City Gas Company, 25 Conn., 19; Citizens' Gas-light Company v. Louisville Gas Company, Ky. Law Rep. and J., volume 5, page 78, July, 1883; Whiting v. Sheboygan, &c., R. R. Company. 25 Wis., 180; Constitution of Kentucky, Bill of Rights, sections 1, 2, 14; McCullough v. Maryland, 4 Wheaton, 431; Washington University v. Rouse, 8 Wall., 441.)

BROWN, HUMPHREY & DAVIE FOR APPELLEE.

1. The act of the General Assembly, in order to induce the establishment of a Board of Trade in Louisville, to foster commerce in Kentucky, is a valid act, and exempts the property of the Board until repealed.

2. The sheriff had no right, in May, 1884, to report, assess or collect back taxes on the Board of Trade building for the years 1880, 1881, 1882 and 1883.

3. An assessment of taxes without notice to the tax payer, so that he can be heard as to the proper taxable valuation of his property, is illegal.

4. The act of 1873, exempting the Board of Trade building from taxation, is constitutional. (Desty on Taxation, volume 1, 460; Hoke v. Commonwealth, 79 Ky., 579; Cooley on Taxation, 260; 29 Cal., 449; 1 Pick., 140; 74 Pa. St., 486; L. & N. R. R. Co. v. Commonwealth, 4 Ky. Law Rep., 90; General Statutes, 739; Desty on Taxation, 597; 5 Ky. Law Rep., 838; Cooley on Taxation, 266; Rhorer on Railroads, 1463; 21 Grattan, 614; 1 Duv., 298; 7 Dana, 342; 21 Wall., 498; 8 Bush, 608; 12 Ib., 236; Commonwealth v. Owensboro R. R., 81 Ky., 572; 5 Bush, 458; 7 Howard, Miss., 247; Commonwealth v. Whips, 80 Ky., 274; 3 J. J. Mar., 598; 11 Mon., 91; 6 Ib., 592; 1 Dana, 232; 5 Bush. 681; 79 Ky., 25; 24 Howard, 300; 41 Cal., 168; 63 Barb., 437; 95 Ill., 561; 73 Mo., 558; 1 Duvall, 298; 19 Barb., 166; 11 Wis., 42; 80 Ky., 659; 5 Bush. 257; 13 B. Mon., 15; 10 Bush, 682; Ib., 218; 21 Pa. St., 164; 19 Wis., 652.)

CHIEF JUSTICE HINES DELIVERED THE OPINION OF THE COURT.

On the fifteenth of March, 1862, the Louisville Board of Trade was incorporated. The act of incorporation contains these provisions: The corporation may hold real estate, by purchase or otherwise, not to exceed in value at any time $300,000, and may make such regulations "as may advance the commercial character of Louisville, fix and determine just rules and customs among its business community, acquire and disseminate useful business information and avoid and adjust, as far as practicable, the controversies and misunderstandings which may arise between individuals engaged in trade." The act further provides that the company may authorize subscription of stock in shares not exceeding $100; that the company shall engage in no traffic, and that the Legislature reserves the power to alter or amend the charter at pleasure.

On the twenty-third of April, 1873, the charter was amended as follows: "Any real estate held by the Louisville Board of Trade in the city of Louisville, by purchase in fee-simple, not exceeding one hundred by two hundred feet in area, and any improvements thereon, shall be, and are hereby, exempted from all State taxes, so long as said property shall be occupied by said Board of Trade for the purposes contemplated in its organization. And the general council of the city of Louisville is authorized to exempt such property so held and occupied from all taxes to be levied by said general council of said city of Louisville."

There was no organization under the original char-

ter and amendment until 1879, when the company purchased real estate in Louisville, within the charter limits, and has been engaged in business since. Certificates of membership were issued and sold for ten dollars each that were worth, at the institution of this action, near $170: the increased value of certificates of membership coming from annual dues, income derived by the company from renting such portions of the buildings owned by it as were not used in transacting the appropriate business of the company.

The question presented on the appeal is whether the property of the Board of Trade is exempt from State taxation by reason of the act of 1873, quoted. This involves the inquiry as to whether that act is constitutional.

An act of the Legislature may be unconstitutional because impliedly forbidden by the Constitution, or because expressly thereby forbidden. An act is, by implication, unconstitutional when not legislative in its nature; such as an act taking the property of one citizen and giving it to another, or an act making one a judge in his own case. Such attempted legislation is arbitrary and despotic, not in its nature legislative, the legislative department of the government being limited by its nature as the executive and judicial, their respective powers being circumscribed by the rules of Magna Charta and of the common law, constitutions generally not undertaking to define the duties and powers of either of these branches of the government. When the legislation is in terms forbidden, we need look no fur-

ther in order to declare it unconstitutional, but when it is not so denounced, we have the more delicate task of inquiring as to the nature and limit of legislative powers. We are of the opinion that the act exempting the property of appellee is unconstitutional, both because it is not legislative in its nature, and because expressly declared in the Constitution to be beyond the authority of the Legislature.

The power of taxation grows out of the necessity to preserve the government by laying a common burden upon every citizen enjoying its protection of life, liberty and property, and is limited in its nature to objects that are public, as distinguished from those that are personal or private in their character.

Taxation immediately for the benefit of an individual is a contradiction in terms. The right of the Legislature to contract away this attribute of sovereignty, when not forbidden by the Constitution, has been held in many of the States to exist, and has been so repeatedly held by the Supreme Court of the United States, but never by a concurrence of the entire court except where the purpose was clearly a public one.

But as the Supreme Court has the final jurisdiction to determine whether such legislation is contrary to the Constitution of the United States, which forbids a State to pass any law impairing the obligation of a contract, and have held that it is, we must acquiesce unless we find that the Constitution of this State in terms forbids such legislation. Of this we will now inquire.

The first section of the thirteenth article of the

Constitution of this State declares "that all freemen, when they form a social compact, are equal, and no man, or set of men, are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services."

A construction of this provision in a case of taxation has never arisen in this State; but it has been considered in other cases between individuals where separate or special privileges had been granted by the Legislature. The first case in which the meaning of this provision arose and was decided, without division, was that of Gordon, &c., v. Winchester Building Association, 12 Bush, 110. At the time of the passage of the charter of the association, the general law forbade, under penalty of the forfeiture of all the interest, the charging of interest at a greater rate than ten per centum per annum. The charter authorized the association to charge more than ten per centum, and this court declared the act unconstitutional because it granted to the association an exclusive privilege without the consideration of public services on the part of the association. In the case of Smith v. Warden, decided January 20, 1883 (80 Ky., 609), it was held that a special act, giving a clerk a longer time in which to collect his fees than was allowed by the general law as to other clerks, was unconstitutional. In the latter case, no provision of the Constitution is referred to, but it is expressed in the opinion that the legislation was unequal and unjust, and therefore unconstitutional. It is insisted that some of the legislative acts declared to have been unconstitutional were so declared be-

cause they were exceptional in their character; but whether they were separate or exceptional, they were equally within the constitutional prohibition. They were privileges granted without the performance of any public service, while there was a general law denying the privilege to citizens in general. There is no other provision of the Constitution forbidding special, separate or exceptional legislation. This provision can not apply to political office or hereditary distinctions, because the twenty-eighth section of the thirteenth article of the Constitution provides: "That the General Assembly shall not grant any title of nobility or hereditary distinction, nor create any office, the appointment of which shall be for a longer time than for a term of years."

Whatever difference of opinion there may be as to whether the first section of the thirteenth article of the Constitution applies in restraint of the grant of privileges as directly presented between individuals, there can be no doubt that this provision is a restriction upon the exercise of the taxing power. It is certainly a "public privilege" to be exempt from taxation. The exercise of such power is purely an act of sovereignty. Independently of any constitutional provision, the surrender of such an element of sovereignty is never to be presumed. Every intendment is against it so strongly that a reasonable doubt of the legislative intention to surrender or limit must be solved against such intention. Uniformity and equality of taxation is of the essence of the power, and an exception in one case is the increase of the burden of taxation upon others not thus favored.

The apparent conflict in the application of this doctrine between the several State and Federal courts has arisen from the different views of the courts as to what constituted a "public purpose," and that inquiry arises here: Is the exemption claimed in consideration of a public service and for a public benefit? When it is conceded that the company is required to perform a public service, within the meaning of this provision of the Constitution, it must also be conceded that the Legislature are the exclusive judges as to what amount of public service will justify the grant; but they can not be the judges as to whether there are public services to be performed; for, in such case, they would be permitted to nullify the provision of the Constitution.

When any department of the government is constituted the sole judge of its own powers, there is no longer a constitutional limitation of powers.

It will be seen from the charter of appellee, already quoted, that no public duties or services are prescribed as a consideration for the grant of exemption from taxation. The only limitation upon the exemption is that it shall cease when the company no longer uses the property for the purposes provided in the charter. The Constitution provides that the grant of an exclusive or separate privilege must be supported by the "consideration of public service." That consideration must be either past, present or future. There is no pretense of a past or present consideration. If it is future, it must be prescribed in the act of incorporation. We find no duties prescribed there that could support a contract. The powers granted are mere

gratuities, to be exercised at the pleasure of the company, and if they were imperative they are not public in their nature. The gathering and dissemination of commercial information, and the making and enforcing rules for the conduct of business men in the city of Louisville, may be incidentally beneficial to the city as well as to the State at large, but those things are not public duties or public services within the meaning of the Constitution.

The company makes its own rules, which appear to be primarily for its benefit. Its own members divide the profits and enjoy the privileges and benefits resulting directly from the association. To the public there is only an incidental advantage, that would necessarily flow from such an enterprise instituted without legislative aid. By an amendment to the charter of this company in May, 1880, they were given the power to define the duties of the Louisville flour inspectors, and to fix their fees. This amendment imposes no duty upon appellee, it is a mere grant of a privilege that may or may not be exercised, and even if exercised, would not be the performance of a public service. Appellee may perform a service that is directly beneficial to the local public of the city of Louisville, but the existence of such benefit would not authorize a tax upon all the people of the Commonwealth to foster such an enterprise. The exemption of this corporation from State taxation is a tax, to that extent, upon every citizen of the Commonwealth, as every other citizen must help to bear the burden thus lifted from the corporation.

As a general rule, the test of the right to exempt

property is the existence of the right to levy a tax
to foster such property. The levy of a direct tax
upon the whole people of the State, to be paid to this
·corporation to forward the ˙objects stated in their
charter, would be declared at first blush unconstitu-
tional, and yet that is what is indirectly done by the
exemption. If the same power exercised by this
·corporation had been conferred upon a designated
individual, it would strike any one as palpably be-
yond legislative authority. But there is no difference
in principle between the corporation and an individ-
·ual. If there is the˙ power to exempt the˙ one there
is unquestionably the power to exempt the other. It
is not every enterprise that is incidentally benefi-
·cial to the ˙public that will authorize the State to
foster it at the expense of the people at large. The
·object must appear upon the face of the legislation
to be directly for the public good, and of such a
character as to call for the aid of the State to for-
ward it in the exercise of a governmental function.
The building up in Louisville of any extensive man-
ufactures would be of an incidental benefit to the
people of the whole State, but no one would suppose
for a moment that the whole State should contribute
·to it.

Every citizen is entitled to equal rights and equal
privileges with every other citizen. In entering into
the social compact called government, he stipulates·
to bear only his proportion of the common burden
of taxation, and when more is imposed upon him,
his property is taken against his consent and with-
·out consideration, it is spoliation. The exemp-

tion of charitable institutions and schools has always been recognized as valid, because done in the exercise of a governmental function ; but private undertakings, primarily for private gain or aggrandizement in any way, can not be protected individually and specifically by the government, but must come under general laws that operate alike upon all.

We are of the opinion that the act of exemption is unconstitutional, and the judgment is reversed and cause remanded with directions to dismiss the petition and dissolve the injunction.

---

Judge PRYOR delivered the following dissenting opinion :

The appellant, John D. Barbour, as sheriff of the county of Jefferson, reported to George H. Webb, clerk of the Jefferson County Court, that the assessor of the county had omitted to assess the real estate and improvements belonging to the Board of Trade, situated on the south-west corner of Third and Main streets, in the city of Louisville, for the years 1880, 1881, 1882 and 1883. The property was then assessed, as provided by the statute, for those years, the amount of taxes being $1,860, and thereupon the sheriff undertook, after tendering to the president of the Board a receipt for the taxes, to levy on the chairs, desks and tables of the corporation to satisfy the claim of the State.

An injunction was obtained by the corporation against any action by the sheriff on the ground that

by a provision of its charter the property of the corporation was exempt from the payment of all State taxes.

A demurrer was entered by the defense, and a motion made to dissolve the injunction on the face of the petition. The facts, therefore, alleged in the petition must be regarded as true.

The Chancellor overruled the demurrer and also the motion to dissolve the injunction, and, upon the failure of the defense to plead to the action, a judgment was entered perpetuating the injunction. On the hearing of this case, counsel for the corporation insisted that the manner of the assessment was illegal, and, therefore, the judgment below was proper; but without considering that branch of the case, I will proceed to determine the real question raised by the State through its collecting officer, and that is as to the constitutionality of the exemption.

It is maintained by counsel for the sheriff that the Legislature had no power, admitting the facts alleged in the petition for an injunction to be true, to grant to the corporation immunity from taxation.

The importance of the question involved necessitates an inquiry into the character and business of this corporation, and the consideration influencing the Legislature to exempt its property from the payment of State taxes. Before, however, proceeding to such an inquiry, it is proper to determine the extent of the power of the Legislature, under the Constitution, to make such exemptions. The right of the State to exempt from taxation the property of charitable, religious and educational institutions

has never been questioned, and, having the right, says Mr. Justice Cooley, "to cause taxes to be levied from motives of charity or gratitude, so for like reasons it may exempt the objects of charity and gratitude from taxation." The immunity in this case arises from no such motive as would justify the exemption of mere benevolent institutions, and unless this provision of the appellee's charter is sustained upon the theory that some equivalent has been given the State for the surrender of the right to tax the corporate property, then this judgment should be reversed.

This court has in effect adjudged that the consideration requisite to maintain such a contract between the corporation or the citizen on the one hand and the State on the other, for the surrender of the exercise of this sovereign right, is the consideration of public service, or that character of service conducive to the public good. It was so held in the case of Sutton's Heirs v. The City of Louisville, 5 Dana, and in the case of The City of Lexington v. McQuillan's Heirs, 9 Dana. Was there such a consideration for the grant in this case is the only question involved.

Where there is a common burden to be borne by common contribution in the way of taxation, it is the universal doctrine that each and every citizen must bear his share of that burden, and payment may be coerced by the seizure and sale of his property, except in cases where there is a valid statutory exemption. This corporation, known as the Board of Trade, was created by an act of the Legislature, approved March 16, 1862, and by the terms of its charter it was

authorized to hold and receive property not to exceed in value $300,000.

It is alleged in the petition, and appears from the face of the charter, that the prime object of the association is "to make such rules, regulations and by-laws as will advance the commercial character of the city of Louisville, fix and determine the rules and customs among the business community, acquire and disseminate business information, and avoid and adjust, as far as practicable, the controversies that might arise between those engaged in trade."

Those who desired to promote the objects of the organization were authorized to do so by becoming stockholders or the owners of shares in the enterprise. It is also provided that this Board of Trade "*shall not engage in traffic of any kind or exercise any banking privileges, and the Legislature shall have power to repeal, alter or amend this charter at any time.*" It is further alleged, that as the corporation was prohibited from engaging in any business, and having no income to pay taxes and other expenses, that efforts to procure stock proved unavailing until they applied to the Legislature of the State in 1873, asking exemption from taxation to enable them to succeed in this public enterprise. An act of the Legislature was then passed, to the effect "that any real estate held by the Board of Trade in the city of Louisville, by purchase in fee-simple, not exceeding one hundred by two hundred feet in area, and any improvements thereon, shall be, and are hereby, exempt from all State taxes so long as said property shall be occupied by said Board of Trade for the purposes con-

templated in its organization," and the general council of the city of Louisville, by the same enactment, was empowered to exempt the property from the payment of city taxes. An organization was then effected, based on the rights and privileges conferred by the grant, and stock subscribed exceeding in amount $100,000. The general council of the city made the exemption as authorized by the act, and a purchase was made by the Board of the Lithgow building at the price of $100,000, secured by mortgage. The property purchased did not exceed one hundred by two hundred feet in area, and since the purchase the corporation has used and occupied the building for the purposes contemplated in its organization. It appears that its official reports are distributed each year to the public for information.

It has in its employ a large number of clerks and employes, whose business it is to prepare, in tabulated form, and furnish daily for publication throughout the country, the statistics of over one hundred and sixty classes of produce; and that this information is the principal basis of the mercantile and trade calculations with respect to that produce in the United States.

It also appears that since its organization (the fact being alleged) and the act of exemption by an act of the Legislature, it has the supervision of and is made the inspector and register of all grain that passes through the public warehouses of the city. It is also made the inspector of flour and other produce, and furnished for public information the statistics of all the movement of freights on the railroads

leading to and from the city. This seems to be the sole business of this organization, and the expenditures made and services performed by the corporation, unlike other private corporations, must have had primarily in view the commercial prosperity of the city and State, realizing only those incidental advantages that all business men have from the results of the gratuitous labor and expense of the association. An investment has been made by a private corporation for a public purpose, to which they have pledged their money and credit without receiving any greater consideration than the mere rise in value of the property and the income from some storerooms under the main building that is applied to the expenses of the enterprise and the payment of the bonded debt. Since the purchase of the property, as was conceded at the hearing and shown by exhibits filed, the property has risen in value, and an income derived from stores under the main building that has caused a large increase in the value of the stock. Still a large portion of the bonded debt remains unpaid, and, if satisfied in full, the Chancellor has no power for that reason to sanction the act of the sheriff in seizing the corporate property in the face of this legislative exemption.

While the Legislature has neither the unlimited power to tax or the unlimited power to exempt property from taxation, that department of the State government is the sole judge of that which is necessary for the public good, and the courts should not attempt to control it.

It is insisted that by the terms of the charter there

is no obligation on the appellee to discharge any public duty, and that such a grant is in violation of section 1 of the Bill of Rights, declaring "that all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive separate public emoluments or privileges from the community, but in consideration of public services."

It was held in the case of Williams v. Cammack, 27 Mississippi, that a similar clause in the Constitution of that State was "directed against superiority of personal and political rights, and a denial of all title to individual privileges, honors and distinctions from the community, but for public services."

This court has differed as to the meaning of this provision of the Bill of Rights, in determining the constitutionality of State legislation; but we will doubtless concur that sound policy requires uniformity and equality in taxation as near as may be practicable, and that those desiring the protection to person and property from the State government must bear their proportion of the burden. This doctrine is fundamental, as has been held by the courts of every State in the Union.

The purposes of this corporation are clearly set forth in its charter, and the exemption based on the consideration that the object in view will be obtained, "and so long as the property is occupied by the Board of Trade for the purposes contemplated in its organization, the property is exempt from State taxation." It is distinctly alleged that those public duties have been performed, and were being discharged when this levy was made upon the corporate property.

It can not be maintained from the provisions of the charter, or the legislation in reference to it, that the primary object of the organization was to advance the private interests of those connected with it. A few public-spirited citizens have devoted the use of this private property to the public good, reaping only the incidental benefits that must necessarily accrue to the entire commercial world.

The corporation can engage in no business or traffic, and the Legislature seeing, as this court must presume, the public benefits resulting from the organization, has, since the date of the exemption, by special enactments accepted by the corporation, imposed upon it the discharge of public duties that otherwise belonged to the municipal government of the city in which this property is located.

The Legislature and the general council of the city of Louisville have each made this exemption in consideration of the public benefits derived from the organization, and while the mere incidental advantage arising to the public from the promotion of private interests will not authorize this character of legislation, when private property or its use is devoted to the public in the manner alleged in the petition of the appellee and evidenced by its charter, an exemption from taxation based on such a consideration should be upheld.

Mr. Cooley, in his work on Constitutional Limitation, says "that what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the Legislature must decide in its own judgment, and in

respect to which it is vested with a large discretion which can not be controlled by the courts, except, perhaps, when its action is clearly evasive, and when, under a pretense of a lawful authority, it has assumed to exercise one that is unlawful." (Cooley's Constitutional Limitations, page 155, fifth edition.)

The cases cited by counsel for the appellants have but little if any analogy to the case before us. In the case of Lowell v. The City of Boston, 111 Mass., a tax was levied to rebuild the houses of citizens that had been destroyed by fire, and the court very properly held that the tax was not levied for a public purpose, but was taking, by means of taxation, the money of A to rebuild the property of B.

In the case of the Brewer Brick Company against Brewer, 62 Maine, the plaintiffs, citizens of the town of Brewer, claimed that its property was exempt from taxation by reason of the by-laws of the town exempting manufacturing establishments from *such burdens*. It was held that neither the town or the Legislature was vested with such a power. That was a case of the exemption of private property from its share of the burden, and if the Legislature of this State had exempted from taxation the large business house of one of the merchants connected with the present corporation by reason of the incidental benefits the city of Louisville received from his individual enterprise, it would be analogous to the cases cited by counsel, and open to constitutional objection.

In the case of Gordon v. The Winchester Building Association, reported in 12 Bush, the corporation was "invested with the power to loan its money at a greater

rate of interest than the other banks of the State, or the private citizen, and than was allowed by the general law." There was no consideration expressed or given for this privilege, and such partial legislation in favor of one to the exclusion of others, who are necessarily to be affected by it, can not be sustained.

In that case a special privilege was granted the association with no other consideration than its purpose to loan money, and compel the borrower to pay a rate of interest that would have been usurious if borrowed from any other corporation or individual. It was a discrimination in favor of one to the exclusion of all others.

Taxation may be imposed for other than mere governmental purposes, and where the sovereign power can impose the tax, it certainly has the right by contract based upon a consideration for the public good, to relieve property from a burden for which it would otherwise be liable; and the fact that the contract is with a private corporation can make no difference, and that presumption is always in favor of the validity of the grant. (State Bank of Ohio v. Knoof, 16 Howard.)

Mr. Justice Black, in the case of Sharpless v. The Mayor of Philadelphia, 21 Penna., delivering the opinion of the court, said: "It is a grave error to suppose that the duty of a State stops with the establishment of those institutions which are necessary to the existence of government, such as those for the administration of justice, the preservation of peace and the protection of the country from foreign enemies. Schools, colleges and institutions for the

promotion of the arts and sciences which are not absolutely necessary, but highly useful, are also entitled to a public patronage enforced by law. *To aid, encourage and stimulate commerce, domestic and foreign, is a duty of the sovereign as plain and as universally recognized as* any other."

We think it can not be doubted (if such was the true test, which I deny) but that the Legislature could have empowered the city of Louisville to have imposed a tax for the purchase of a building to be devoted to the same use, and conducted at the expense of the city.

It was on the faith of the grant that the individual members of this corporation invested their money in the property sought to be taxed, based upon a contract with the State as binding as if made between two of its citizens.

Nor is the State now complaining. The act exempting this property remains 'on the statute book unrepealed, and the tax is now attempted to be coerced upon no other ground than that, in the opinion of the collecting officer, the exemption is in violation of the Constitution.

The right to repeal or modify the charter is expressly reserved by the terms of the grant, and still neither a legislative repeal or a modification of the act of exemption has, so far as appears from the record, ever been attempted; but, on the contrary, the legislative branch of the State government, instead of repealing this exemption, has been gradually imposing on the corporation the exercise of public duties.

It is not alleged in the pleadings, or maintained in

the argument, that the corporation has been adding to the value of the corporate property with a view of avoiding taxation. No such question is before us, and when a court of equity undertakes to deprive the Legislature of the right to exercise its discretion as to what constitutes the public welfare, it is an assumption of power that does not belong to the judicial tribunal of the State. The legislative power to make such exemption has been sustained by this court in Johnson v. Commonwealth, 7 Dana; Farmers' Bank v. Commonwealth, 6 Bush; City of Louisville v. Commonwealth, 1 Duvall; E. & P. R. R. v. Trustees, 12 Bush; Keith v. Hamilton, 5 Bush; Commonwealth v. Owensboro Railroad, 5 Ky. Law Reporter.

For these reasons I must dissent from the views expressed in the principal opinion.