# Trustees of Widows' and Orphans' Fund of Beattyville Lodge No. 304, Independent Order of Odd Fellows v. Blount, Marshal of Beattyville.

(Decided January 24, 1928.)

## Appeal from Lee Circuit Court.

1. Taxation.—It is not origin or ownership of property, but use to which it is put, that determines its immunity from taxation under Constitution, section 170; exempting "institutions of purely public charity."

2. Taxation.—Where lodge maintained home for widows and orphans of deceased members of lodge, and accumulated fund for benefit of institution, which fund was dedicated solely to support and maintenance of home, and was not used in any way for purposes of local lodge, and portion of fund was invested in real property from which income was received, and applied to purposes of such home, property held exempt from taxation as "purely public charity," under Constitution, section 170.

S. P. STAMPER for appellants.

H. L. WHEELER for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The question involved on this appeal is whether or not certain real estate situated in Beattyville, Lee county, Ky., belonging to the appellants as trustees of the widows' and orphans' fund, Beattyville Lodge No. 304, Independent Order of Odd Fellows, is exempt from municipal taxation under section 170 of the Constitution of this state. The petition of the trustees, seeking to enjoin the appellee, the city marshal, from collecting taxes assessed upon the property by the city, was dismissed on demurrer, and the facts are undisputed.

The Independent Order of Odd Fellows maintains a home for the widows and orphans of deceased members of the order. The local lodge has accumulated a fund for the benefit of the institution, and this fund is dedicated solely to the support and maintenance of the home. It is not used in any way for the purposes of the local lodge, but is a purely charitable fund, irrevocably devoted to the beneficent objects stated. A portion of this fund has been invested in a lot in Beattyville, upon which a garage has been erected, and from which a small income is received, and applied to the purposes of the charity. No

private pecuniary benefit is derived from the use of this property.

The appellee relies upon the case of Merrick Lodge No. 31, Independent Order of Odd Fellows, v. City of Lexington, 175 Ky. 275, 194 S. W. 92, in which this court held that the property of a lodge which is maintained for the benefit of its members, and the dispensation of charity is merely incidental, is not exempt from taxation. Other cases are to the same effect. City of Newport v. Masonic Temple Association, 108 Ky. 333, 56 S. W. 405, 21 Ky. Law Rep. 1785, 49 L. R. A. 252; Vogt v. City of Louisville, 173 Ky. 119, 190 S. W. 695, Ann. Cas. 1918E, 1040; Benevolent Association of Elks v. Wintersmith, 204 Ky. 20, 263 S. W. 670.

But clearly such decisions do not determine the question involved on this appeal. The property of the widows' and orphans' home is not the property of the local lodge, although the fund was provided originally by the lodge. It is not the origin or ownership of the property, but the use to which it is put, that determines its immunity from taxation. Section 170 of the Constitution exempts nine classes of property, one of which is "institutions of purely public charity." In Trustees of Kentucky Female Orphans' School v. City of Louisville, 100 Ky. 470, 36 S. W. 921, 19 Ky. Law Rep. 1091, 40 L. R. A. 119, it was held that the exemption of the institution from taxation by section 170 of the Constitution included the corporate being with its estate as an entirety, and embraced all its property wherever situated, or in whatever form it might exist. In Widows' & Orphans' Home of Odd Fellows v. Commonwealth, 126 Ky. 386, 103 S. W. 354, 31 Ky. Law Rep. 775, 16 L. R. A. (N. S.) 829, it was held that the widows' and orphans' home of the Odd Fellows was an institution of purely public charity, and all of its property devoted to the purpose for which it was created was exempt from taxation. In that case a right to tax $4,000 of the funds of the home which had been lent as an investment was asserted, but denied by this court. In that opinion it was said:

"It is earnestly insisted that, in the phrase under consideration, the word 'purely' qualifies and limits the word 'public,' and that no charity is to be considered 'purely public,' in which the general public is not permitted, at least in theory, to participate; that a charity which is limited by the terms of its organization or endowment to one class or

sect of the community is a private charity, and therefore not exempt from taxation. In this view we cannot concur. Not only is it opposed to the meaning of the pharse as interpreted by our own opinions above cited, but it is opposed to the manifest spirit and intention of the Constitution itself. No one will dispute that it is the duty of the state to support and educate its destitute orphan children. This is incumbent upon the state, not only because of the duty owed to the children, to rear and educate them into useful men and women, but because of the duty owed to the public at large that they shall not be allowed to degenerate by neglect, into criminals, and thus become a menace to the peace and safety of the community, and an enduring burden upon the public anxiety and treasury. This being true, how must this public duty be performed? Manifestly, either by an involuntary system of taxation upon the property of all the citizens in the state or the taxing district wherein the charity is to be maintained, or by the voluntary contributions of the charitable portion of the community, an example of which is afforded in the institution under discussion. Now, it is obvious that every dollar contributed by individuals, intelligently expended in maintaining such institutions as we are now contemplating, is a dollar saved to the general public, who would otherwise be forced to raise it by voluntary taxation. This being true, it is clearly to the interest of the state to foster and encourage voluntary contributions to be used in bearing the public burdens. Every dollar so raised is a gift to the state, for it discharges a debt due from it to the needs of its destitute children. Is it possible, then, that the framers of the Constitution, who were wise and patriotic men, meant to discourage gifts to the state by levying an ad valorem tax on the gift? As a financial scheme, this might find a parallel in a tax on bequests endowing public schools, but not short of it. We do not believe the convention meant to station a tax-gatherer at the door of the human heart, and thus confine charity a prisoner in her own home. The convention meant by the word 'purely' to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no

private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color or class, it was a private, and not a public, charity. The members of the convention were wise and practical, and knew that men, as a rule, administer their charity through the organization or organizations to which they belong. Thus, Catholics will naturally distribute their charity through the organization of the Catholic Church; Presbyterians through those of the Presbyterian Church; Masons through the organization of the Masonic Order, etc. But while each is discharging for the state a particular and limited part of its duy to the objects of the public's bounty, together they are fulfilling the state's whole duty far more completely and efficiently than could be done by means of a system of involuntary taxation administered through the hands of hired officialism. The difference between these two systems—the one actuated by love, and the other serving for pay—is as marked as the difference between the ministrations of a mother at the bedside of her sick child and that of a hired nurse. If one fixes his eye narrowly on the work of only one of the various bodies and organizations engaged in relieving the necessities of misfortune he might reach the conclusion that it was not a public charity, because limited (in theory, never in actuality) to the members of the particular order or body; but he would make the mistake of one who would conclude that, because a regiment of a battle line had a flag bearing a name or number different from the other flags in the line, it was not a part of the army as a whole, and was not engaged with the other regiments in the mutual purpose of resisting the common enemy. The charities of the various religious and fraternal organizations we are contemplating may seem, when viewed separately and with a narrow and atrabilious vision, to be too limited in their ministrations to be called public; but, when viewed as a whole, the compass of their good work is as wide as the circle of human suffering, and as universal as the love of the heart of man.''

It is the opinion of this court that the property of the widows' and orphans' fund is exempt from taxation as a purely public charity, and the court below erred in sustaining the demurrer to the petition as amended, and in dismissing the action.

The judgment is reversed for further proceedings not inconsistent with this opinion.