## Preachers' Aid Society of Kentucky Annual Conference of Methodist Episcopal Church, South, v. Jacobs.

(Decided October 31, 1930.)

EDWARD C. O'REAR, ALLEN PREWITT and BROWNING, REED & ZEIGLER for appellant.

I. JAY MILLER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

This is a proceeding by a revenue agent to assess, as property omitted from assessment, the funds of the Preachers' Aid Society of Kentucky Annual Conference of the Methodist Episcopal Church, South, for the years 1919-28. The fund in 1919 amounted to $34,184.60. It increased from year to year until 1928, when it amounted to $58,113.74. The defendant is a corporation. Its purpose is to secure and maintain an endowment fund for the benefit of the superannuated preachers, who were members of the society, or their widows and infant orphans, and to secure a fund for the relief of such preachers in emergencies, also to provide homes for the

superannuated preachers of the Kentucky conference, their widows and orphans. The funds of the society are secured by dues from members, by contributions, bequests, annuities, and investments. Any minister of the conference may become a member of the society by the payment of $2 annually, or, by the payment of $15 at one time, he may become a life member, and any one by paying $15 may constitute another a life member. One dollar of the annual dues goes to the endowment fund and one dollar for the immediate relief fund. The affairs of the society are conducted by nineteen managers, who are chosen by the conference. The funds of the society are held by the treasurer, who gives bond, approved by the board of managers. The treasurer, the president, and secretary constitute the investment committee for the investment of funds. The beneficiaries of the society are superannuated members of the Kentucky conference, who are members of the society, and their widows and infant orphans. The income is appropriated to the beneficiaries in proportion to the length of time they have been effective and the extent of their labor and sacrifices for the church, and the necessities of the members or their dependents at the time of the appropriation, upon a plan of distribution to be agreed upon by the board of managers. The appropriation is made annually from the income on the fund, and the money is divided among those entitled to participate in it by the board on the above principles. The immediate relief fund is not invested, but is distributed annually to persons in need of immediate relief. This fund is made up of the $1 paid annually by the ministers. No deduction is made from the fund for the pay of any officer handling it. The only deductions from the income is the necessary expense for postage, etc. The $1 assessment paid by each minister annually amounts to about $120 a year and is less than 10 per cent. of the income from the fund, which is made up mainly by bequests and contributions from laymen. It is the rule of the corporation that, if any minister fails to pay his annual dues, he is dropped and does not participate thereafterwards in the fund; but the uncontradicted testimony of the treasurer is that all the ministers are members of the society; he says: "It used to be that some of them were not, but it has gotten now where they are all members. We also got it in there

that you can make a life member for $15.00 and I have paid many a poor fellow's $15.00, so that if anything happened and he hadn't paid his dues he wouldn't lose out." In other words it appears now from his testimony that practically all the ministers in the conference are entitled to participate in this fund, and that their widows and orphans come in if they die. It is not in substance an insurance for only the benefit of the members themselves.

By section 170 of the Constitution it is provided, among other things, as follows: "There shall be exempt from taxation . . . institutions of purely public charity." The circuit court held that the society is not an institution of purely public charity and gave judgment for the assessment of the property for taxation for ten years, with a 100 per cent. penalty and 20 per cent. for the revenue agent. The society appeals.

In Widows' & Orphans' Home of O. F. v. Com., 126 Ky. 397, 103 S. W. 354, 358, 31 Ky. Law Rep. 775, 16 L. R. A. (N. S.) 829, where is was contended that the charity was not purely public because confined to widows and orphans of Odd Fellows, the court, sustaining the exemption of the property from taxation, said:

"We do not believe the convention meant to station a taxgatherer at the door of the human heart, and thus confine charity a prisoner in her own home. The convention meant by the word 'purely' to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color or class, it was a private, and not a public, charity. The members of the convention were wise and practical, and knew that men, as a rule, administer their charity through the organization or organizations to which they belong. Thus, Catholics will naturally distribute their charity through the organization of the Catholic Church; Presbyterians through the Presbyterian Church; Masons through the organization of the Masonic Order, etc., etc.

In this opinion, Widows' & Orphans' Home v. Bosworth, 112 Ky. 200, 65 S. W. 591, 23 Ky. Law Rep. 1505, was overruled and this was followed and approved in Trustees of Widows' and Orphans' Fund v. Blount, 222 Ky. 717, 2 S. W. (2d) 394. In Newport v. Masonic Temple, 108 Ky. 333, 56 S. W. 405, 21 Ky. Law Rep. 1785, 49 L. R. A. 252; Merrick Lodge v. Lexington, 175 Ky. 275, 194 S. W. 92; and Benevolent Elks v. Wintersmith, 204 Ky. 20, 263 S. W. 670, it was held that a Masonic Lodge or an Odd Fellows or Elks Lodge was not an institution of purely public charity, and that its property was not exempt from taxation, but this is on the ground that these are in substance clubs, maintained primarily for the comfort and convenience of the members. There is a clear distinction between property held by a club for the use of its members and property held for a purely public charity. The care of infants and those who are old or disabled and poor is one of the public burdens and is a purely public charity. Those who undertake this for certain classes of persons to this extent relieve the state of part of the burden. Such is necessarily a fund to provide for superannuated old ministers, their widows and infant children; for they are men unable longer to work in their calling, and ministers who serve merely for a salary sufficient for their support cannot lay up money for their support in old age. While each sect may feel an interest in providing for its own old ministers, there would be less response to an appeal for all old ministers. A scheme such as that here presented encourages each sect to look after its own needy ones and places the responsibility where it should rest. The interest on the fund is distributed by the board in its discretion as the needs of the beneficiaries require. It is none the less a purely public charity because it is confined to a certain class. All within this class participate. Those who contribute the funds (and these give over 90 per cent. of it) do not know to whom it will be distributed. They only know that it will be disbursed to the class named as their needs require.

The court is unable to see that this case can be distinguished from the two widows' and orphans' home cases above cited. There is no practical distinction between a fund to provide a home in which the widows

794

and orphans of a certain class are supported and a fund to provide for the support of the widows and orphans of another class in the home where they are. The same is true as to men who are poor and old or disabled. One is a purely public charity no less than the other. Each relieves the public of part of the public burden.

Judgment reversed, and cause remanded for a judgment as above indicated.