Connie HANCOCK, Floyd County
Property Valuation Adminis-
trator, et al., Appellants,

v.

PRESTONSBURG INDUSTRIAL
CORPORATION, et al.,
Appellees.

No. 2010–SC–000376–DG.

Supreme Court of Kentucky.

April 26, 2012.

Douglas M. Dowell, Department of Revenue, Frankfort, KY, Dwight Stacy Marshall, Assistant Floyd County Attorney, Prestonsburg, KY, Counsel for Appellants.

Richard E. Fitzpatrick, Lexington, KY, Martin L. Osborne, Osborne & Heaberlin,

Thomas M. Smith, Prestonsburg, KY, Counsel for Appellee Prestonsburg Industrial Corporation.

Not Represented by Counsel, Appellee Kentucky Board of Tax Appeals.

Opinion of the Court by Justice SCHRODER.

The single issue in this tax case is whether the Prestonsburg Industrial Corporation (PIC) is a charitable organization under section 170 of the Kentucky Constitution, which exempts "institutions of purely public charity" from paying ad valorem taxes. We opine that PIC's real property is not tax exempt under section 170 of the present Kentucky Constitution, reversing the Court of Appeals and remanding for further proceedings consistent with this opinion.

PIC was founded in 1968 by a group of local businessmen, as a private, nonprofit corporation, to attract business and industry to Prestonsburg for economic development.[1] To accomplish this goal, PIC would buy property, make improvements, and then sell the property to various businesses, all for the betterment of the community through growth and industry. The profits were rolled back into PIC for additional purchases and improvements.

In 2001, PIC purchased a 100–acre parcel from the City of Prestonsburg for $1.00 and a portion of the proceeds after a resale by PIC. After the purchase, the Floyd County Property Valuation Administrator sought to tax the property. PIC claimed it was tax exempt under section 170 of the present Kentucky Constitution, and filed for tax exemption from the Kentucky Revenue Cabinet.[2] Revenue denied the application and PIC appealed to the Kentucky Board of Tax Appeals (KBTA).[3] KBTA concluded that the property was not tax exempt by finding that PIC was not a governmental body or agency and that, under section 170 of the Kentucky Constitution, in order to be exempt from taxes "the property must belong to a public entity and must be used for public purposes."

PIC appealed to the Floyd Circuit Court, which reversed the KBTA and found the property tax exempt. The court reasoned that because PIC was a charitable organization and the land was used for public purposes, it was therefore tax exempt under Kentucky Constitution section 170. On appeal to the Court of Appeals, that court opined that in order for the property to be exempt from taxation under section 170 of the Kentucky Constitution, the land had to be public property used for public purposes or PIC had to be a purely charitable organization. The court found PIC was a private corporation and the land was not public property. Nevertheless, the court concluded that PIC was a purely charitable organization and thus ex-

---

1. Per the articles of incorporation, PIC was to be formed as a 501(c)(3) corporation whose primary purpose was "to advance the educational, civic, social, commercial, and economic interest of the City of Prestonsburg and the general welfare and prosperity of its tributary territory ... [and] to operate exclusively for religious, charitable, scientific or educational purposes for people residing in the [Prestonsburg] area...." PIC ultimately decided to obtain a certificate as a 501(c)(4) corporation; however, this distinction is not significant for the purpose of the present matter.

2. Now known as the Department of Revenue, Finance and Administration Cabinet, Commonwealth of Kentucky.

3. Originally, PIC conferenced the assessment with the PVA and then appealed to the Floyd County Board of Assessment Appeals (KRS 133.120), neither of which could decide the exemption question, only the assessment of $50,000.00, which was not being contested.

empt from taxation, as the test applied by the Court of Appeals for the exemption was whether the activities reasonably bettered mankind. Our Court accepted discretionary review to determine whether PIC is a purely charitable organization under the Constitution and thus exempt from ad valorem taxes.

■ Section 170 of the present Kentucky Constitution exempts from taxation, "institutions of purely public charity," and the real estate they own. We are being asked to consider a non-traditional definition of "institutions of purely public charity," namely, whether economic development for job creation can qualify a private, nonprofit corporation as an institution of purely public charity.[4] The Kentucky Constitution, section 170, provides, among other things, that "institutions of purely public charity" shall be exempt from taxation. As a general principle, such provisions granting tax exemption must be strictly construed, as it is a well-settled principle that taxation is the rule and exemption the exception. *Banahan v. Presbyterian Housing Corp.*, 553 S.W.2d 48, 51 (Ky.1977).

Our predecessor Court has held that the word "purely" as used in this section modifies "charity." *Iroquois Post No. 229 v. Louisville*, 309 S.W.2d 353, 355 (Ky.1958). By interpreting "purely" as a modifier of "charity," the Court has limited the tax exemption to organizations that are "wholly altruistic in the end to be attained, and

that no private or selfish interest should be fostered under the guise of charity." *Preachers' Aid Soc. v. Jacobs*, 235 Ky. 790, 32 S.W.2d 343, 344 (1930).

■ According to our case law, "charity" includes activities which reasonably better the condition of mankind. *Commonwealth ex rel. Luckett v. I. W. Bernheim Found.*, 505 S.W.2d 762 (Ky.1974). Consistent with *Bernheim*, in *Banahan* this Court reaffirmed that the test for determining whether a "charity" is entitled to such an exemption was still the test as announced in *Iroquois Post:* "First, the institution must itself be a charity and the income from its property must be used to further its charitable purpose; secondly, the property must be employed for a purely charitable purpose." *Banahan*, 553 S.W.2d at 51 (quoting *Iroquois Post*, 309 S.W.2d at 354). Moreover, *Banahan* also endorsed the rule announced in *Iroquois Post* that in order for property to be employed for a purely charitable purpose, "charity must actually be dispensed there or it must provide 'necessary quarters for an organization whose prime aims and functions ... [are] of an actively charitable nature.'" *Banahan*, 553 S.W.2d at 51 (quoting *Iroquois Post*, 309 S.W.2d at 355). Despite the Appellees' arguments to the contrary, nothing in *Bernheim* or *Banahan* purports to overrule any precedent regarding the legal meaning of the terms "charity" or "purely public charity."[5]

---

4. Many of the objectives and goals of PIC could be achieved through KRS 154.28–010 through 154.28–140, as an industrial park foundation, but as PIC admitted during the oral argument, it was trying to get more done by avoiding the regulations that accompany industrial parks.

5. In fact, in its holding that charity is "broader than relief to the needy poor and includes activities which reasonably better the condition of mankind," the Court in *Bernheim* re-

marked that there was no contradictory prior case law. Thus, the argument cannot be made that *Bernheim* was a departure from, or otherwise broadened, prior interpretation of the term "charity." 505 S.W.2d at 763–64. Likewise, *Banahan* reaffirmed the test for determining whether a charity was entitled to an exemption as the test announced in *Iroquois Post*, 309 S.W.2d at 354, and *Commonwealth ex rel. Luckett v. Grand Lodge*, 459 S.W.2d 601, 602 (Ky.1970).

Although a design to achieve goals beneficial to the community is common to all charitable purposes, it does not follow that all such designs constitute a "purely public charity" as defined under section 170 and our case law. Our predecessor Court has previously stated that a resulting increase in commercial activity is no more than an incidental benefit to the public, and an enterprise incidentally benefitting the public would not entitle that enterprise to a tax exemption as performing a public purpose. *Barbour v. Louisville Bd. of Trade,* 82 Ky. 645 (1885). Moreover, the Court has determined that an organization fails to qualify as a "purely public charity" for the purpose of tax exemption when the charitable outcome is merely incidental and the organization's principal activities center around promoting the interests and gratifying the wishes of its own membership. *Iroquois Post,* 309 S.W.2d at 355.

The distinction between a charitable institution and an organization which has incidental charitable benefits was highlighted in a case involving whether a hospital was a "charitable institution." *Univ. of Louisville v. Hammock,* 127 Ky. 564, 106 S.W. 219 (1907). In that case, our predecessor Court explained that even though physicians at the hospital did a "great deal of charitable work," the hospital was not a "charitable institution" as the real purpose in establishing the hospital was to make the university more attractive to prospective students and to increase enrollment (and thus, tuition received) by offering instruction and clinical experience in a hospital setting.[6]

▪ In the case before us, PIC has argued that it is a purely public charity because of expected indirect effects on the local economy and tax base in the form of job creation and commercial development. We disagree. This Court notes at the outset that the Appellees have not cited any Kentucky case which purports to find that a private, nonprofit organization, whose purpose is commercial or economic development with possible incidental job creation, is a "purely public charity" entitled to tax exemption under section 170.[7] Although our predecessor Court has previously suggested, in a case involving eminent domain, that the elimination of unemployment could constitute a "public *purpose,*" *Industrial Dev. Auth. v. E. Kentucky Reg'l Planning Comm'n,* 332 S.W.2d 274, 277 (Ky.1960); this Court has gone on to note that there is not a single Kentucky case which equated either "public *purpose*" or "public *benefit*" to "*charitable* use" or "public use." *City of Owensboro v. McCormick,* 581 S.W.2d 3, 5 (Ky.1979).

PIC's actual activities involve developing and marketing commercial property, activities which primarily serve and benefit the buyers or customers of PIC. In this regard, there is no evidence that PIC's buyers/customers would qualify as persons or organizations in need of charity or general

6. *See also Gray St. Infirmary v. City of Louisville,* 65 S.W. 11 (Ky.1901).

7. In contrast, two Kentucky Attorney General opinions had concluded that such an industrial organization would not be entitled to such a tax exemption. *See* OAG 63–1107; OAG 62–1172. A third Attorney General Opinion, OAG 84–169, concluded that the test for such an exemption was that: (1) the corporation or institution must itself be a charity and the income from its property must be used to further its charitable purpose, (2) the property must be employed for a purely charitable purpose, but that it is sufficient that the ultimate effect of the use of the property is to accomplish the charitable purposes of the institution, (3) a profit corporation or institution is not a public charity, and (4) the charity must be extended only to the Commonwealth of Kentucky and its people.

public assistance.[8] Neither is PIC claiming to actually create jobs, but rather it claims only the incidental benefit of bringing in new businesses, which may potentially create jobs.

Moreover, the members of PIC consist of local members of the business community, whose own interests would arguably be served by an increase in commercial and economic development in the area. Along these lines, a nonprofit organization formed by businessmen to "assist in the development of the City . . . as a means to attract business and industry . . ."[9] cannot be said to be a "charitable institution," as its purpose is to make the city more attractive to *businesses.*

■ Applying the *Iroquois Post* test, the evidence does not establish that PIC is a purely public charity or that its property is employed for a purely charitable purpose. Although "charity" is broader than activities that merely "fulfill basic human needs," *Bernheim,* 505 S.W.2d at 763, it is clear by the evidence of record that PIC's activities are inconsistent with a "purely public charity" as its activities are not, for the above reasons, "wholly altruistic in the end to be attained . . . [so] that no private or selfish interest should be fostered under the guise of charity." *Preachers' Aid Soc.,* 32 S.W.2d at 344. Simply stated, commercial and economic development are the promotion of business interests and not, therefore, indicative of actions of a purely public charity.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the matter remanded to the Floyd Circuit Court to enter an order consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion.

SCOTT, J., dissenting:

From its formation in 1968 until the events giving rise to this dispute in 2001—some thirty-three years—it appears that nobody ever questioned Prestonsburg Industrial Corporation's (PIC) status as a purely public charity. Now, although PIC will, continue to operate as a charitable organization, and its property will continue to be employed for purely charitable purposes, its property will be taxed. Consequently, its purely charitable economic efforts on behalf of the Prestonsburg community will be reduced equivalently. This is not only unfair, it is unconstitutional. *See* Ky. Const. § 170 (exempting from taxation "institutions of purely public charity"). It also defies the wisdom of the old adage, "buy a man a meal and feed him for a day—give him a job and he and his family will feast for a lifetime." Thus, I must respectfully dissent.

To be entitled to charitable tax exemption under Kentucky Constitution Section 170, PIC must establish three conditions: (1) it "must itself be a charity," (2) "the income from its property must be used to further its charitable purpose," and (3) "the property must be employed for a purely charitable purpose." *Banahan v. Presbyterian Hous. Corp.,* 553 S.W.2d 48,

---

8. *See also Bower Hill Civic League v. Bd. of Prop. Assessment,* 207 Pa.Super. 122, 215 A.2d 305 (1965), a decision arising out of the intermediate appellate court of Pennsylvania, which although not binding authority, persuasively explains that even when an organization is nonprofit and administered by volunteer (unpaid) members, profit motive is nonetheless determined by whether such organizations are engaged in a commercial venture in competition with others engaged in similar businesses.

9. *See* Appellee's Brief at 2–3.

51 (Ky.1977) (quoting *Iroquois Post No. 229, Am. Legion v. City of Louisville,* 309 S.W.2d 353, 354 (Ky.1958)).[10]

First, PIC is a charity. The majority gives short shrift to PIC's very illuminating articles of incorporation which, given the appropriate attention, essentially prove this element of the test. For example, the articles specifically state that "[t]he corporation is organized to serve the public interests; accordingly, it shall not be operated for the benefit of private interests." The articles go on to explain that PIC was created:

> ... to advance the educational, civic, social, commercial, and economic interests of the City of Prestonsburg and the general welfare and prosperity of its tributary territory; to promote integrity and good faith; just and equitable principles in business and professional activity; and uniformity in commercial usages and to acquire, preserve, and distribute educational, civic, social, commercial, and economic statistics and information of value; and further, to operate exclusively for religious, charitable, scientific or educational purposes for the people residing in the aforesaid area, including, but not limited to, receiving contributions and paying them over to one or more organizations described in Section 501(c)(3) and exempt from taxation under Section 501(a) of the Internal Revenue Code as now in force and afterwards amended.

This sounds unmistakably like a purely public charity.[11]

Its amended articles of incorporation also lend support to this conclusion:

> No part of the net earnings of the corporation shall enure to the benefit of any private individual within the meaning of Section 501(c)(3) of the Internal Revenue Code as now in force or afterwards amended, and that
>
> No compensation shall be paid to any member, officer, Director, Trustee, Creator, or Organizer of the corporation or substantial contributor to it except as a reasonable allowance for services actually rendered to or for the corporation.

Indeed, the evidence established that no part of the net earnings benefitted any such private individual, and no compensation was paid to any of the people listed—both of which are unmistakable characteristics of a purely public charity.

In fact, PIC meets the very definition of "charitable organization." According to *Black's Law Dictionary,* a "charitable organization" is "[a] tax-exempt organization that (1) is organized and operated exclusively for religious, scientific, literary, educational, athletic, public-safety, or community-service purposes, (2) does not distribute earnings for the benefit of private individuals, and (3) does not participate in any way in political candidate campaigns, or engage in substantial lobbying." The first two prongs are integrated into PIC's articles of incorporation, and the third is a condition of its agreement with the City; to wit, "[t]he City will actively lobby the Kentucky De-

---

**10.** *Iroquois Post* established this test and combined the first two elements: "Two basic conditions must be established in order to warrant an exemption from the payment of taxes. First, the institution must itself be a charity and the income from its property must be used to further its charitable purpose; secondly, the property must be employed for a purely charitable purpose." 309 S.W.2d at

354. Because the test actually requires satisfaction of three conditions, I separate it into a three-part analysis.

**11.** Moreover, the articles provide that PIC is to "exercise the general powers as set forth in Chapter 273, Kentucky Revised Statutes"; Chapter 273 is titled "Charitable and Educational Societies."

partment of Transportation and Highway Department for construction of [a split-level interchange at the intersection of US 23 and Kentucky Route 1428] so as to facilitate access to the industrial site and as a means of access to the City." Apparently, then, PIC does not itself actively "engage in substantial lobbying." In light of the foregoing, I must conclude that PIC is a charity and therefore satisfies the first element of the *Iroquois Post/Banahan* test.

Second, it is undisputed that PIC used all the income from its property to further its charitable purpose. *Banahan,* 553 S.W.2d at 51. As the majority notes, any profits from PIC's business "were rolled back into PIC for additional purchases and improvements." *Hancock v. Prestonsburg Indus. Corp.,* No. 2010–SC–000376–DG, op. at 200 (Ky.2012). Thus, the second element of the *Iroquois Post/Banahan* test is satisfied.

Third, it is clear to me that PIC established the final element of the test: that the property was employed for a purely charitable purpose. PIC purchased the property that is the subject of this litigation from the City of Prestonsburg for $1.00. Thereafter, PIC and the City entered into an agreement with respect to how the property would be developed and how any profits would be distributed. That agreement explains that PIC was obligated to develop the property "for the creation of new jobs or in order to pre-

serve existing jobs in Prestonsburg, Floyd County, or in the Big Sandy Valley Region of eastern Kentucky." In other words, PIC was required to develop the property consistent with its charitable purpose as stated in its articles of incorporation,[12] which is sufficient under our precedent to receive the tax exemption. *Banahan,* 553 S.W.2d at 51 (holding that "it is sufficient that the ultimate effect of the use of the property is to accomplish the charitable purposes of the institution").

Unfortunately, the majority mischaracterizes PIC. First, it portrays PIC's activities as those "which primarily serve and benefit the buyers or customers of PIC." Op. at 202. Thus, according to the majority, PIC's activities only have the "incidental benefit of bringing in new businesses, which may potentially create jobs." *Id.* However, this ignores *both* the articles of incorporation *and* the agreement between the City of Prestonsburg and PIC. As noted above, the articles explain that the purpose of all of PIC's business is to "advance the interests of ... the City of Prestonsburg," *not* the buyers or customers of PIC (except insofar as they also advance the interests of the City).[13] Also, as noted above, the agreement between PIC and the City establishes that the purpose of developing the property in question was to "creat[e] new jobs or ... to preserve existing jobs in Prestonsburg, Floyd County, or in the Big Sandy Valley

---

12. Again, PIC's charitable purposes as stated in its articles of incorporation include "advance[ing] the educational, civic, social, commercial, and economic interests of the City of Prestonsburg and the general welfare and prosperity of its tributary territory." Developing property in order to create jobs, or preserve existing jobs, in Prestonsburg, Floyd County, or in the Big Sandy Valley Region of eastern Kentucky is unquestionably consistent with these charitable purposes.

13. Of course, if PIC's purpose in developing this one hundred acre parcel was to primarily benefit its buyers and customers, and *not* the City and its citizens, then the development would be ultra vires, and could theoretically be challenged legally. "[A]n act of a corporation is ultra vires, or beyond its power, when the act is outside the objects for which the corporation is created, as defined in the law of its organization." 19 C.J.S. *Corporations* § 673 (2007).

Region of eastern Kentucky." Thus, the articles and the agreement *disprove* the majority's contention that PIC's activities only *incidentally* bring in new business and create jobs—this was PIC's *obligation* under the agreement.

Moreover, the majority mischaracterizes the intentions of PIC's members, alleging that as "local members of the business community, [their] own interests would arguably be served by an increase in commercial and economic development in the area." Op. at 203. But isn't this how ancient tribes became communities, which themselves later developed into towns and then cities?

The majority goes on to assert that "a nonprofit organization formed by businessmen to 'assist in the development of the City ... as a means to attract business and industry ...' cannot be said to be a 'charitable institution,' as its purpose is to make the city more attractive to *businesses.*" *Id.* at 203 (quoting Brief for Appellee at 2–3). But businesses employ *people*—those *people* (and their families) benefit just as much or more than the incorporated organizations. And once these buildings are erected they will house businesses. Those businesses will pay taxes, including higher ad valorem taxes on property that beforehand was essentially worthless hillside.

And so what if PIC members incidentally benefit from bettering their community? *All* charitable institutions (and the members thereof) benefit from their work by improving their communities. Thus, the fact that PIC members benefit from PIC's business is inapposite—a healthier business climate in and around the City of Prestonsburg benefits the entire community, and PIC should not be punished just

because its members, incidentally, are part of that community. And today, if you ask any state or federal government official what their number one priority is, they will tell you "jobs!" It is currently the number one social priority in America!

Finally, PIC's status as the City's alter ego with respect to developing this hillside property lends support to the conclusion that it should be tax exempt. In *Autry v. Western Kentucky University,* we extended governmental immunity to WKU's Student Life Foundation, Inc. (SLF). 219 S.W.3d 713, 719 (Ky.2007). In that case, the issue was who could potentially be held liable for the wrongful death of a WKU student who was brutally assaulted in her dorm room and later died from her injuries. *Id.* at 716. Although SLF was an independently incorporated entity created by WKU to hold title to the dormitory properties, *id.* at 718, we held that it was entitled to official immunity in its official capacity as an "agent of alter ego of WKU," which itself is entitled to official immunity.[14] *Id.* at 719. We held that SLF was cloaked with immunity *despite* acknowledging that it "is not a governmental agency and that it is clearly acting as a business entity in owning the dormitories and contracting with WKU to operate and manage them." *Id.*

Similarly, here we have a private, nonprofit corporation that is acting as an alter ego of the City of Prestonsburg with respect to the property at issue herein. The City sold PIC a one hundred acre tract of land for the nominal fee of $1.00. They then entered into an agreement whereby PIC would develop the land into commercial or industrial property and would share the sale or lease proceeds. Furthermore,

---

**14.** We also held that SLF was entitled to qualified official immunity in its *individual* capacity because the action (or inaction) for

which it was being sued was a discretionary function, not a ministerial one. *Id.* at 719.

the agreement requires reciprocal obligations concerning marketing the property and securing financing. And when they are through, the property will be sold, going back on the tax rolls at a hundredfold increase in value. Although I recognize that this is not an immunity case like *Autry,* similar principles apply, and, assuming that the City of Prestonsburg would be cloaked with tax exempt status, PIC should be as well.

In sum, I believe the majority is wrong in concluding that PIC is not a purely public charity under our Constitution and case law. Everything in the record indicates to me that (1) PIC is a charity, (2) the income from its property is used to further its charitable purpose, and (3) the property is employed for a purely charitable purpose. Moreover, the property carries with it the additional benefit of substantially increasing the tax base of the community when sold.

Accordingly, I would affirm the unanimous judgment of the Court of Appeals.