## Commonwealth, et al. v. Berea College.

(Decided June 14, 1912.)

### Appeal from Madison Circuit Court.

Taxation—Proceedings by Auditor's Agent to Tax Certain Properties of Berea College—Constitutional Provision—Exemption.—In a proceeding to tax certain properties of Berea College, namely, a laundry, printing department, water works system, supply store and other properties operated in connection with the institution, the evidence shows that each of these institutions is maintained either for the purpose of industrial training, and education for the young men and women in attendance at the school, or to afford them some means of livelihood, or to supply, as in case of the water works plant, a necessary physical

and hygenic adjunct of the institution as a cleanly dwelling place. The gain which comes from these institutions is not gain in the commercial sense, but is turned into and becomes a part of the general income of the institution's purely educational side, and for its purely educational purposes. Held, the record brings this school as to the assets named, within that class exempt from taxation by section 170 of the Constitution.

GREELEAF & HERRINGTON, O. P. JACKSON for appellants.

BURNAM & BURNAM for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The Commonwealth instituted this proceeding in the Madison county court through one of its revenue agents for the purpose of causing to be assessed for taxation certain properties of Berea College. Certain of these properties were assessed in the county court; whereupon the college appealed to the circuit court. There, upon a hearing, the Commonwealth's proceeding was dismissed, and it appeals here.

Berea College is an incorporated educational institution. As stated by its president in his testimony, its object is to promote the cause of Christ by furnishing a proper Christian education to young people of good moral character at the least possible expense. He further testifies that one of the methods adopted by the institution to this end was to furnish to the indigent pupils of the school all possible facilities for earning money for their support while at school; that it taught the modern branches incident to an American college; normal training and industrial training for the gainful occupations of life, such as agriculture, printing, woodworking, nursing, housekeeping and the like; that the men were taught agriculture with special reference to mountain conditions, cabinet work, carpenter work and printing; that the young women, in addition to their education, were trained in nursing, household management, laundry work, hygiene and the like. He further testified that the income was subject annually to a deficit of $50,000 or more which had to be made up from year to year by private subscription. The work that this great school is doing is a matter of common knowledge and of current history. There is no question made but that it is an educational institution within the intent of section 170 of the Constitution. That section provides, among other things, that "there shall be exempt

from taxation institutions of education not used or employed for gain by any person or corporation and the income of which is devoted solely to the cause of education.''

There were five distinct branches or species of property which is was sought to subject to taxation in this action, a laundry, a waterworks property, a printing plant, a store and small hotel. . These properties, with the facts as brought out by the testimony, will be discussed in order.

The laundry was maintained by the institution as an educational adjunct and of large value to the girl students because it afforded them a means of earning money and of learning cleanliness and neatness in their manner of life; it was operated by shifts of girl students who were paid from 4 to 10 cents an hour for their labor; in the laundry all the table and bed linens of the students were washed, and occasionally it took in outside family washings; it was maintained at a serious deficit to the institution.

Dr. Pearson, the lately deceased Chicago philanthropist, gave to the institution $40,000 for the purpose of erecting a waterworks system for it. This was done and hydrants were provided for the sundry buildings of the institution. Some of the citizens of the town had been permitted to make connections with these water mains at their own expense and to receive water from them, for which they paid the rates prevailing in the neighboring city of Winchester. Dr. Frost testified that this water supply was an absolute necessity for the institution and that such revenue as was derived from the outside users went wholly to the college, from which no person or individual had ever derived any profit.

The institution as well maintained a printing department as a part of its industrial education afforded to students. Here general printing and book binding is done. Some confusion arose in this aspect of the case because of the fact that a newspaper was printed in this plant; but this newspaper, a separate corporation, was not an adjunct of the property of the institution. It had an arrangement whereby it leased or rented the printing facilities of the educational department for the purpose of printing the paper, but the institution itself derived no income save this rental income, from nor did it own the newspaper.

The institution maintained upon its campus a small

co-operative store. This place was used, according to the testimony, as a distributing department for towels, pillows, chairs and the like as they were needed in the dormitories, boarding halls and the hotel. In addition to this it handled text-books, toilet articles and the like which it kept for sale to the students of the university. This store was remote from the adjacen t village of Berea and in an obscure place. The material sold there was sold at a minimum of profit sufficient only to pay its running expenses. The five years preceding the taking of the testimony had shown a loss on the store of perhaps $60. According to Dr. Frost's testimony it had not sold all told $10 worth of goods to others than students and outside customers had been discouraged from the beginning.

The institution also owned and operated upon its grounds the hotel known as Boone Tavern. This was built from the endowment funds of the institution with the expectation that it would be rented to outside parties, but it had been found impossible to obtain renters in accord with the principles of the institution. It was built largely in order to have a stopping place for the guests of the college who came down from time to time for the purpose of making it the beneficiary of their gifts, and as a boarding place for teachers and students and their families. The clerks in the hotel, the chambermaids, the waiters and the like are students at the institution who are thus enabled to earn means wherewith to maintain themselves. The tavern is charged up with an annual rental, after the payment of which it has earned no profit. It pays rent to the endowment fund just as any tenant does upon any piece of real estate kept by the institution for the purpose of investment. There is no profit or benefit in it to any private individual.

From the foregoing statement it will be seen that each of these institutions is maintained either for the purpose of industrial training and education of the young men and women in attendance at the school, or to afford them some means of livelihood, or to supply, as in the case of the waterworks plant, a necessary physical and hygienic adjunct of the institution as a cleanly dwelling place. Though it be conceded that they are operated for gain, the gain if any which comes from them is not the earning of gain in the commercial sense in which that term is recognized, but the meagre profit if any is turned

into and becomes a part of the general income of the institution's purely educational side and for its purely educational purposes. With these facts and considerations before us it is not difficult to reach a correct conclusion, for the whole matter has become one of settled adjudication in Kentucky. The first case of consequence which arose upon this section of the Constitution was that of the Trustees of the Kentucky Female Orphan School v. City of Louisville, 100 Ky., 470. In this case the effort was to assess for taxation in the city of Louisville certain Louisville real estate belonging to an orphan school located in Woodford county. The property was held not subject to taxation. It, located at a point far distant from the seat of the institution, was used purely for gainful purposes in that from it was derived a revenue used for the maintainance of the school. That case was a much broader one than the one at bar, for in the one at bar each species of property sought to be assessed was used not purely as a means of deriving revenue, but was used as well in direct physical connection with the seat of learning itself.

In City of Louisville v. Southern Baptist Theological Seminary, 100 Ky., 506, which came up at the same time. the effort was to tax in the city of Louisville and for the State certain lands of the seminary not in actual use for teaching and a part of which were situated in a distant county. The seminary, it appears, was engaged in furnishing without cost educational facilities to young men preparing to enter the Christian ministry. The property was held not liable upon the authority of the orphan school case.

The case of City of Louisville v. The Board of Trustees of Nazareth Literary and Benevolent Institution, 100 Ky., 519, also came up at the same time. The institutions sought to be assessed in this case had as their object the furnishing of general education, either free or for nominal or low prices. The properties had been acquired by gifts from charitable people, and in none of them was there any element of personal gain or profit. None of the establishments were more than self supporting. The properties were held not the subject of assessment.

In the three foregoing cases Judges DuRelle, Guffey and White dissented, but the reason for the majority opinion in each case is sound, has been consistently followed and meets with our entire and cordial approval.

The argument of the appellant here bases itself much upon the argument of the dissenting opinions in those cases, arguments which we believe to be unsound for the reasons indicated in the orphan school case.

The case of Commonwealth v. Gray's Trustee, 115 Ky., 665, came up upon an effort to assess for taxation some five or six thousand dollars left by Jane Gray, of Boyle county, in trust, the interest to be applied annually to the schooling of four poor children. This fund was held to be not assessable because it was an institution devoted solely to the cause of education. It was added that when any money or other property is set apart, the exclusive use or income from which is to be aplied to the cause of education or pedagogy it, impressed with that character, becomes an educational institution within the meaning of section 170 of the Constitution without regard to the particular form of its investment. The appellant here seizes upon an expression in the Gray case and endeavors to argue that it in effect overrules the orphan school case. The expression is that what the Constitution makers had in mind was "to exempt from taxation all property that was dedicated solely to the cause of education and not used or employed for gain." It is argued that this phraseology means that the property must not only be devoted solely to the cause of education, but though so used must not be employed for gain. The quotation does not submit itself to any such strained construction. What it meant was that so long as the property was used for an educational purpose and not for outside private commercial profit the property should be exempt. The opinion expressly bases itself upon the orphan school case and follows instead of overruling or departing from it.

The appellant argues that if these properties be decreed exempt from taxation there would be no reason why Berea College could not go out into the world and conduct any sort of general mercantile, manufacturing or commercial business or pursuit. It suffices to say that in the adjuncts above described so intimately connected with the life of the institution it has not gone out into an active commercial life nor has it manifested any spirit or purpose so to do. It is to be doubted whether there are any public institutions in the land, unless it be those devoted purely to the inculcation and maintenance of religious training and life, which can compare in importance to those erected and maintained

for the education and mental and moral training of the boys and girls who are to come on and perpetuate the race itself and the institutions of our Commonwealth and our country. The institution in question, located in the small village of Berea, in Madison county, adjacent to the large mountain section of Kentucky, affords educational opportunity both in mental and industrial lines, to a class of youth who otherwise would be denied this inestimable privilege. As disclosed by the evidence, its existence from year to year is precarious upon its financial side. The makers of the Constitution said that such an institution should not pay taxes upon its assets exercised in or devoted to the cause of education. Certainly the record here brings this school, as to the assets named, within that class.

The judgment of the trial court is affirmed.