# Commonwealth v. Board Education Methodist Episcopal Church.

(Decided November 10, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Taxation—Religious Societies—When Property of Exempt From Taxation.—An office building owned by the Board of Education of the Methodist Episcopal Church, and located in the city of Louisville, is exempt from taxation, where the entire income therefrom is used in the support and maintenance of a school owned and conducted by said Board, in Barbourville, Ky.

2. Taxation—Religious Societies—When Property of Exempt From Taxation.—Section 170 of the Constitution, which exempts from taxation institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education, exempts the entire property of such an institution wherever situated, and in whatever form its investment may be found.

3. Taxation—Religious Societies—When Property of Exempt From Taxation.—The Board of Education of the Methodist Episcopal Church, which uses its property and income solely in the support of a school, is an institution of education not used or employed for gain, and its property is exempt from taxation under Section 170 of the Constitution.

4. Taxation—Religious Societies—When Property of Exempt From Taxation.—A school owned and conducted by the Board of Education of the Methodist Episcopal Church, which charges a tuition fee which is not sufficient to pay the expenses of the school, and which requires no belief in the doctrines of the Methodist Church as a pre-requisite to the admission of its students, or the employment of its teachers, but which gives a preference to candidates for the ministry who may be recommended by the Quarterly Conference of the circuit or station where they hold membership, is an educational institution not used for gain; and real estate owned by the board and from which the revenue is derived to maintain the school, is exempt from taxation under section 170 of the Constitution.

M. J. HOLT and A. SCOTT BULLITT for appellant.

HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

The Commonwealth brought this action to have the Kenyon Building, in the city of Louisville, assessed for taxation for the years 1906 to 1910, both included.

The Kenyon Building is a modern, up-to-date office building, containing eighty-seven offices. One of these offices is occupied by the appellee's agent in charge of the building, and the remaining eighty-six offices are rented to business men. The property is worth about $200,000.00, and brings a gross annual rental of from $16,000.00 to $18,000.00. It was devised to the appellee, the Board of Education of the Kentucky Annual Conference of the Methodist Episcopal Church, by Mrs. Fannie Speed. The appellee is a corporation, having in charge the educational work of the Methodist Episcopal Church in Kentucky. The corporation was created by a special charter of the General Assembly, approved January 5, 1867. Acts 1867, vol. 2, p. 622. Its governing board is made up of laymen and Methodist ministers.

By the eighth clause of appellee's charter it is given control of all property constituting the educational fund of the Kentucky Annual Conference; and by the tenth section, the administration of the fund is provided for in the way usual in charitable institutions of this character.

By the eleventh clause of the charter, it is directed that all the net interest, dividends and rent arising from said fund shall be used by the appellee, under the general direction of the Conference, in the payment of the salaries of teachers and the cost of administration of any school or schools that may have been established or maintained by the board; or in aid of worthy youths of either sex, struggling to acquire an education, preference being given in the case of such aid-afforded students to such licentiates or candidates for the ministry as may be properly recommended by the Quarterly Conference of the circuit or station where they hold membership.

The defendant corporation conducts a school called Union College, at Barbourville, in Knox county, and uses the rents derived from the Kenyon Building in its support. Union College is not a religious school, but is a regular educational school, and no preference is given to children of parents who are members of the Methodist Church. It has no theological course, but is a secular school of the character indicated by its name. And, although Union College charges a tuition fee, it appears from the proof that this fee is far from covering the operating expenses of the school, which are supplemented by funds derived from other sources. The in-

come derived from the Kenyon Building constitutes about two-thirds of the entire income of the board. Some of the teachers in Union College are Methodists, some are Presbyterians, and one is a member of the Christian Church; and all are paid salaries for their services. The course taught is a regular academic course, equivalent to that of the Louisville High School, and a collegiate course having a curriculum similar to colleges of that character.

No question is ever asked a teacher concerning his religious affiliation, and no doctrinal features of the Methodist Church are taught, although Union College is under the auspices and operation and management of the Methodist Episcopal Church, because that church owns the property. The religious teachings consist of chapel exercises every morning.

The chancellor was of opinion that the Kenyon Building, considering its ownership and the use to which its rents were applied, was not subject to taxation; and, having dismissed the petition, the Commonwealth appeals.

Section 170 of the Constitution, in so far as it is material to this case, reads as follows:

"There shall be exempt from taxation * * * institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education."

Whether the Kenyon Building is exempt from taxation depends upon the character of the appellee corporation and the use to which it puts said property, or its income derived therefrom.

It will be observed that so much of section 170 of the Constitution as is above quoted, exempts from taxation two classes of property; (1) institutions of purely public charity, and (2) institutions of education, not used or employed for gain by any person or corporation, the income thereof being devoted solely to the cause of education. It is not necessary in this opinion to consider whether the appellee is an institution of purely public charity, since we are of opinion it clearly comes within the second clause of exemptions above referred to, in that it is an institution of education whose property is not used or employed for gain, and the income thereof is devoted solely to the cause of education.

In considering this question of exemption from taxation, it would be useless to discuss the cases decided under the Constitution of 1850, since section 170 of the present Constitution of 1891 made a change in this respect, and is, of course, controlling.

The meaning, scope, and effect of section 170 of the present Constitution was discussed at great length by this court in 1897 in the cases of the Trustees of Kentucky Female Orphan School of Midway v. City of Louisville, 100 Ky., 470; 40 L. R. A., 119; City of Louisville v. Southern Baptist Theological Seminary, 100 Ky., 506; City of Louisville v. The Board of Trustees of Nazareth Literary Benevolent Institution, 100 Ky., 519; and the subsequent case of Commonwealth v. Berea College, decided in 1912, and reported in 149 Ky., 95.

It is sufficient to say, in passing, that the case of Widows' & Orphans' Home v. Bosworth, 112 Ky., 200, relied upon by counsel for appellant, was expressly overruled in Widows' & Orphans' Home v. Commonwealth, 126 Ky., 386, 400; 16 L. R. A. (N. S.), 829; and also, that the dissenting opinions in the Midway Orphan School case and the Southern Baptist Theological Seminary case, *supra,* are not to be now considered, unless this court should be of opinion that the decisions in those cases should be departed from. Indeed, counsel for appellant concedes that if the law is as it was declared by the court in the majority opinion in the Midway Orphan School case, and the like cases, above mentioned, the judgment of the circuit court must be affirmed; but he now asks that those cases be overruled, although they have repeatedly been approved and followed by this court.

It has often been held by this court that the phrases "institution of purely public charity," or "institution of education," used in section 170 of the Constitution, embrace, not only the buildings actually used in teaching, or actually used in administering charity, but that they also embrace all the property of the institution, wherever situated. This appears from the following language taken from the opinion in the Midway Female Orphan School case, *supra:*

"We think, therefore, a proper construction of the language used in the section requires the exemption of the entire property of this institution, wherever situated, in whatever form its investment may be found." 100 Ky., 489.

In that case the school was located at Midway, while the property which the city of Louisville sought to assess was, of course, located within the corporate limits of the city of Louisville.

At the same time the court decided the case of the Southern Baptist Theological Seminary, reported in the same volume, which likewise involved the question of the right of the State to impose a tax on the property of the Seminary located in Louisville, and certain lands and property not actually used in teaching, and some of which was situated in a distant county. The same ruling was there made, and all the property of the Seminary, wherever located, was declared exempt from taxation. The reason for the ruling was, that it was the use to which the property, or the income therefrom, was put, that exempted it from taxation. The use of the property and income for the purposes of education, although it was sectarian, exempted it from taxation under section 170 of the Constitution.

In Commonwealth v. Gray, 115 Ky., 665, this court reaffirmed the Midway Orphan School case and the Baptist Theological Seminary case, as to the meaning of the word "institution," and called attention to the fact that the mere ownership of a building in which a school might be conducted, without the ownership of other property from which a revenue could be derived, might leave the institution entirely unable, for lack of money, to conduct the school.

In speaking upon that subject, the court said:

"It is not a complete definition to define 'institution' as simply a building or a plant or a body corporate. It may be all of these, but, more broadly speaking, it is that which is set up, provided, ordained, established, or set apart for a particular end, especially of a public character or affecting the community. So, when money or other property is set apart, the exclusive use and income of which is to be applied to the cause of education or pedagogy, the property impressed with that character becomes an institution, without regard to the particular form of its investment. When the dedicator, in his munifience, sets apart property or a fund to this end, the people, in a kindred spirit, have declared by their organic law that such property, when so used without gain or profit to the giver or owner, shall be exempt from taxation." 115 Ky., 669.

Again, in Commonwealth v. Pollit, 25 Ky. L. R., 790; 76 S. W., 412, a fund of $12,000.00 held by trustees for the benefit of a school district was held exempt from taxation, because the income from it was devoted solely to the cause of education.

In Commonwealth v. Young Men's Christian Association, 116 Ky., 711, this court again approved the ruling in the Midway Orphan School case, *supra,* and held that certain property belonging to the Young Men's Christian Association in Louisville, but which was not actually used in operating the institution, was exempt from taxation because it was a part of the institution.

Again, in Louisville College of Pharmacy v. City of Louisville, 26 Ky. L. R., 825, 82 S. W., 610, where a part of the appellant's building was used by it for teaching purposes, and the remainder thereof was rented out to tenants, this court again reaffirmed the Midway Orphan School case, *supra,* and held the entire property exempt.

To the same effect see German Gymnastic Association v. Louisville, 117 Ky., 958; 65 L. R. A., 120; 111 Am. St. Rep., 287; Norton v. Trustees, 118 Ky., 836; Commonwealth v. Hamilton College, 125 Ky., 330; and Book Agents of Methodist Episcopal Church, South v. Hinton, 92 Tenn., 188; 19 L. R. A., 289.

There can be no question, therefore, that this case comes within the rule laid down in the several cases above cited.

It is insisted, however, that Union College is a sectarian school, and for that reason property used in its support does not come within the rule above announced. There is no such qualifying restriction in the language giving the exemption; it speaks of "institutions of education"—not of non-sectarian institutions of education. The proof shows, moreover, that the only sense in which Union College may be said to be a sectarian school is the fact that it is owned by the Board of Education of the Methodist Church. But it further appears from the proof that its sectarian character begins and ends with its ownership. Belief in the doctrines of the Methodist Church is not made an essential for admission to the school, either as student or as teacher. In none of the divisions or branches of its curriculum are any of the doctrinal features of the Methodist Church taught in contradistinction from other denominations.

As heretofore stated, the religious teachings consist of chapel exercises in the morning, and the fact that the school is under Christian influences. Counsel for appellant, however, refer to that provision in section 11 of the amended articles of incorporation, which gives a preference to candidates for the ministry who may be "recommended by the Quarterly Conference of the circuit or station where they hold membership;" and contend that this feature of the charter makes appellee's school a sectarian school, and its property taxable.

When, however, the entire section is read, it appears that the language above referred to is merely a provision that, if there be any income left after paying the cost of caring for the trust fund, and after paying the salaries of teachers and the general cost of administration, the board is given the right to give something, in its discretion, in the aid of worthy youths of either sex, struggling to acquire an education, preference being given, in the case of said aid-afforded students, to such licentiates or candidates for the ministry as may be properly recommended by the Quarterly Conference of the circuit or station where they hold membership. But it is obvious that aid thus afforded is given strictly in the cause of education; and, the fact that in this one particular preference is given by appellee to candidates for ministry in the Methodist Church does not make it any the less an institution of education, or take it out of the exemption afforded by section 170 of the Constitution.

But this question is not an open one in this jurisdiction. In the Southern Baptist Theological Seminary case, *supra,* the seminary property was held exempt from taxation, although it was used as a Baptist school wherein the doctrines of that denomination alone were taught.

On that subject, this court said:

"The work of the institution is confessedly a pure charity, and we think it no less a public one. It is free to all; and while under denominational control, so are nearly all successful seats of learning, and this fact has never been held to affect the nature of the charity.

"The peculiar tenets of this denomination are doubtless taught, but a belief of them is not required, and it is not made the test of admission."

The case at bar is stronger for the exemption than the Baptist Theological Seminary case, *supra,* since here

Union College does not teach the doctrines of the Methodist Church as distinguished from other Christian doctrines, although it might do so and still be exempt under the rule laid down in the Baptist Theological Seminary case.

See also Burd Orphan Asylum v. The School District of Upper Darby, 90 Pa. St., 21, quoted with approval in the Midway Orphan School case, *supra*.

This view of the case was made plain in Widows' & Orphans' Home of Odd Fellows v. Commonwealth, 126 Ky., 386, where the exemption was claimed upon the ground that the orphanage was a purely public charity, rather than an institution of education.

In that case, we said:

"The convention meant by the word 'purely' to describe the quality of the charity rather than the means by which it is administered; that it should be wholly altruistic in the end to be attained, and that no profit or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color or class, it was a private and not a public charity. The members of the convention were wise and practical, and knew that men, as a rule, administer their charity through the organization or organizations to which they belong. Thus, Catholics will naturally distribute their charity through the organization of the Catholic Church; Presbyterians through those of the Presbyterian Church; Masons through the organization of the Masonic Order, etc."

And, as was said in Commonwealth v. Young Men's Christian Association, 116 Ky., 772, the fact that some part of the expense in maintaining an institution is required to be paid by those who enjoy all its privileges, does not change its character, since that regulation merely made it partly self-sustaining.

It follows that the judgment of the chancellor dismissing the petition was right, and it is affirmed.