# City of Louisville v. Presbyterian Orphans Home Soc. of Louisville, and eight other cases.

March 6, 1945.

Lewis C. Carroll and Richard H. Hill for appellant.

Thomas J. Wood and Doolan, Helm, Stites & Wood for appellees.

Lorenzo K. Wood, Samuel J. Boldrick, Anne McDonald and William A. Minihan and Robert M. O'Dear, amici curiae.

OPINION OF THE COURT BY JUDGE REES—Affirming.

May a municipality collect taxes upon the income producing real estate of charitable and educational institutions is the question raised by these nine appeals, and we are again called upon to consider and construe section 170 of the Kentucky Constitution, which reads:

"There shall be exempt from taxation public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto; household goods and other personal property of a person with a family, not exceeding two hundred and fifty dollars in value; crops grown in the year in which the assessment is made, and in the hands of the producer; and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location."

In 1943 the City of Louisville undertook to assess for taxation all income producing real estate within its limits belonging to charitable and educational institutions, and thereupon a large number of institutions filed suits in the Jefferson circuit court to enjoin the collection of the taxes on the ground that the property sought to be assessed is exempt from taxation under

the provisions of section 170 of the Constitution. An answer in four paragraphs was filed in each case. In the first paragraph it was denied that the property was exempt under section 170 of the Constitution. The second paragraph described the property and the uses to which it was put, and alleged that it was susceptible of actual use as a site for plaintiff's charitable or educational activity, but that plaintiff elected to put it to other uses under an income producing lease. In paragraph 3 it was alleged that section 170 of the Constitution of Kentucky does not contain any language specifically granting a tax exemption to real property owned by charitable or educational organizations, or held in trust for their benefit, which is leased for income and not used as a site for or to house any charitable or educational activity of such organization; that the section is subject to a construction which would make such property subject to taxation, and that this construction should be adopted because its exemption from taxation results in abuses. In paragraph 4 the defendant pleaded certain facts which it alleged constituted such a change of conditions as to demonstrate the unreasonableness of the construction of the language of section 170 of the Constitution by the courts. Demurrers to the various answers were sustained, the city declined to plead further in the nine cases before us, and in each case it was adjudged that the property was exempt from taxation.

Different types of charitable and educational institutions are represented by these nine appeals, but it is conceded that all of them are institutions of purely public charity or institutions of education not used or employed for gain by any person or corporation and the income of which is devoted solely to the cause of education. The property sought to be taxed is real property located in the City of Louisville, and all of it is leased and is income producing. It consists of office buildings, store buildings, restaurants, rooming houses, parking lots, and other kinds of property leased for business purposes. The question sharply presented is whether this property is exempt from taxation under section 170 of the Constitution. The City claims no right to collect taxes upon the property actually occupied by the respective organizations. The question was first presented to this court in Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky. 470, 36 S. W. 921, 925, 19 Ky. Law Rep. 1091, 1916, 40 L. R. A.

119, which was decided on May 23, 1896, less than five years after the adoption of our present Constitution. In that case the Kentucky Female Orphan School, located at Midway in Woodford county, owned certain real estate in Louisville which was leased for business purposes. The income was used for the purposes for which the school was organized. It was held that the institution was one of "purely public charity" within the meaning of section 170 of the Constitution and was an institution of education "not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education," and that its income producing real estate located in Louisville was exempt from taxation under the constitutional provision. This case will be referred to hereafter as the Midway School case. It has been cited and approved in more than twenty cases, a list of which may be found in Shepard's Kentucky Citations. We shall refer to only a few of them. Counsel for appellant assert with assurance that the construction of section 170 of the Constitution by this court in the Midway School case and the cases following it is clearly erroneous, and that these cases ought now to be overruled. They further assert that even though the original decision was correct when delivered, conditions have so changed as to warrant a departure from the construction then announced. In the Midway School case the lower court, after concluding that the plaintiff was an institution of purely public charity and an institution of education such as is contemplated by the Constitution, adjudged that the word "institution" was used in the Constitution as descriptive of the building or place where the activities of the school were carried on and did not embrace income producing real estate located in Louisville. The Court of Appeals reversed the judgment, and held that the meaning of the word institution should not be so limited but should be construed to embrace all the property of the school wherever situated. In the course of the opinion it was said: "Finding no exception to the rule indicated, that when an 'institution' of the character named is exempted, the charitable being, including necessarily the whole of its estate, is to be exempted, and having determined the Kentucky Female Orphan School to be an institution of purely public charity, we might rest here with our investigation. But it is proper in this case, and necessary in some of the others connected with it, to consider the succeeding

clause of the section: 'And institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education.'"

The court concluded that the income of educational institutions "devoted solely to the cause of education" means "the income of the corporate body" and not "income from the buildings, grounds, etc." The court then said: "We think, therefore, a proper construction of the language used in the section requires the exemption of the entire property of this institution, wherever situated, and in whatever form its investments may be found."

The question was again presented in Commonwealth v. Gray's Trustee, 115 Ky. 665, 74 S. W. 702, 25 Ky. Law Rep. 52, decided May 27, 1903. Certain property had been devised in trust, the income to be used for the education of poor children to be selected by the trustees. An effort was made to tax it, and this court held that it was exempt under section 170 of the Constitution. After citing the Midway School case, the court, speaking through Judge O'Rear said:

"It was argued in that case for the city, claiming the right to tax certain property in which the endowment fund of the orphan school had been invested, that the word 'institution' refers alone to the buildings and grounds used by the schools as a place employed for the purpose of accommodating the pupils and teachers. The court, however, rejected this narrow construction, and found that word embraced not alone the buildings and grounds so used, but that it included the endowment and other funds of the school or corporation which were dedicated solely to the cause of education. What the convention which framed the Constitution evidently had in mind was to exempt from taxation all property that was dedicated solely to the cause of education, and not used or employed for gain by any person or corporation, whether that property was buildings or money, or owned by natural or artificial persons. Buildings alone, and the grounds upon which they stand, are not adequate to provide education. In addition, money must be used to employ teachers, provide text-books, etc. Indeed, the buildings, so far as ownership by the educator is concerned, could be dispensed with, but not the other means. Nor can we believe that it was the purpose

of the convention to require those dedicating their property to this unselfish mode of education to use it in connection with real estate likewise owned and used, before the exemption should apply. It is not a complete definition to define 'institution' as simply a building or plant or a body corporate. It may be all of these, but, more broadly speaking, it is that which is set up, provided, ordained, established, or set apart for a particular end, especially of a public character or affecting the community.''

In Commonwealth v. Young Men's Christian Association, 116 Ky. 711, 76 S. W. 522, 25 Ky. Law Rep. 940, 105 Am. St. Rep. 234, decided November 12, 1903, the question was whether real estate owned by the Y. M. C. A., part of which was rented to raise revenue to help to maintain the institution, was exempt from taxation under section 170 of the Constitution. It was held that the institution was one of purely public charity, and the court, again speaking through Judge O'Rear and citing the Midway School case, held that all of its property was exempt from taxation.

In Commonwealth v. Trustees of Hamilton College, 125 Ky. 329, 101 S. W. 405, 406, 30 Ky. Law Rep. 1338, decided April 17, 1907, the property of Hamilton College was leased for a period of five years, beginning in 1898, to an individual who conducted the school as a private enterprise. The property was held to be exempt from taxation. It is not clear whether property other than the campus and buildings actually used for educational purposes was leased, but, after citing the Midway School case and numerous other cases which had followed it, the court, speaking through Judge Carroll, said: ''From these various decisions it may be gathered that it is the purpose of the state under its tax laws to deal liberally with and foster and encourage all charitable and educational institutions when their conduct and operation does not result in private gain to the persons or corporations or the stockholders therein that own them; and when all the income derived from educational institutions is devoted solely to the cause of education.''

In Widows' & Orphans' Home of Odd Fellows v. Commonwealth, 126 Ky. 386, 103 S. W. 354, 31 Ky. Law Rep. 775, 16 L. R. A., N. S., 829, an effort was made to compel the listing as omitted property of a note for

$4,000 owned by the appellant. It was held that the property was exempt from taxation.

In Commonwealth v. Berea College, 149 Ky. 95, 147 S. W. 929, 931, decided June 14, 1912, an effort was made to tax certain property owned by Berea College, including a water works system, a store, and a hotel which were operated by the college. They were maintained primarily as adjuncts of the institution, but some of the income was derived from outside sources. The property was held to be exempt from taxation. The opinion, written by Judge Winn, discussed the Midway School case and two other cases decided on the same day, that is, May 23, 1896, and continued: "In the three foregoing cases Judges Du Relle, Guffey, and White dissented, but the reason for the majority opinion in each case is sound, has been consistently followed, and meets with our entire and cordial approval. The argument of the appellant here bases itself much upon the argument of the dissenting opinions in those cases; arguments which we believe to be unsound for the reasons indicated in the Orphan School Case."

In Commonwealth v. Board of Education of Methodist Episcopal Church, 166 Ky. 610, 179 S. W. 596, 597, decided November 10, 1915, the appellee owned a large office building in Louisville, Kentucky, known as the Kenyon Building, worth about $200,000. The income from the building was used to maintain Union College at Barbourville, Kentucky. The court held that the property was exempt from taxation, and in its opinion, speaking through Chief Justice Miller, said:

"Indeed, counsel for appellant concedes that, if the law is as it was declared by the court in the majority opinion in the Midway Orphan School Case, and the like cases above mentioned, the judgment of the circuit court must be affirmed; but he now asks that those cases be overruled, although they have repeatedly been approved and followed by this court.

"It has often been held by this court that the phrases 'institution of purely public charity', or 'institution of education,' used in section 170 of the Constitution, embrace not only the buildings actually used in teaching, or actually used in administering charity, but that they also embrace all the property of the institution, wherever situated."

In Church of the Good Shepherd v. Commonwealth, 180 Ky. 465, 202 S. W. 894, 895, decided May 7, 1918, property, part of which was rented to private individuals and the income used for educational purposes, was held to be exempt. In an opinion written by Judge Clay it was said: "We have had occasion in numerous cases to construe the exemption in favor of institutions of education, and, without quoting at length from those opinions, it is sufficient to say that the exemption is not confined to the buildings and grounds in which the school is conducted, but applies to all property, without regard to its location or the form of the investment, where the income therefrom is devoted exclusively to educational purposes, and this is true whether the school be sectarian or not."

In Corbin Young Men's Christian Association v. Commonwealth, 181 Ky. 384, 205 S. W. 388, 389, 1 A. L. R. 264, decided September 24, 1918, it was held that an institution of purely public charity is, by our Constitution, exempt not only from the payment of ad valorem or property taxes but also from occupational license fees imposed for revenue purposes. In the opinion, written by Judge Clark, it was said that: "* * * the exemption granted to such institutions of purely public charity, under the peculiar verbiage of our constitutional provision, includes everything that is embraced by the word 'institution'; and this, we are convinced, includes not only their property, but also necessarily all of their legitimate activities that are consistent with and in the furtherance of the purposes for which they were organized."

In Trustees of Widows' & Orphans' Fund v. Blount, 222 Ky. 717, 2 S. W. 2d 394, decided January 24, 1928, the appellants owned a lot in Beattyville upon which a garage had been erected. The income from the property was used to maintain a widows' and orphans' home. It was held that the property was exempt from taxation, and the court, speaking through Judge Willis, approved the holding in the Midway School case that the exemption of the institution from taxation by section 170 of the Constitution included the corporate being with its estate as an entirety, and embraced all its property wherever situated or in whatever form it might exist.

The Midway School case has been cited with ap-

proval in a number of other cases, including Gray v. Methodist Episcopal Church, 272 Ky. 646, 114 S. W. 2d 1141, decided in 1938. The construction of section 170 of the Constitution now so bitterly complained of by appellant has never been modified, and we have found no opinion of this court in which it has been criticised or questioned. Counsel for appellant assert that the reasoning in the Midway School case is faulty, the decision is wrong, and has been followed with an almost childlike fidelity without a reconsideration or study of the question decided. We think a careful reading of the opinions heretofore referred to refutes this assertion. They were written by some of the most eminent and learned members of the court during the last fifty years, and most of them evince considerable research on the part of the writer of the opinion and a thorough consideration of the question by the court. If the construction placed on section 170 of the Constitution in the first instance and followed consistently since then was incorrect, the mistake was not due to lack of consideration. A majority of the court, as now constituted, is of the opinion that the construction now attacked is correct and carries out the intention of the framers of the Constitution. Prior to the adoption of the present Constitution, the matter of exempting property from taxation was left entirely to the Legislature, and it was to correct inequities created by legislation, particularly special legislation, that section 170 was adopted. The exemption of property of charitable and educational institutions has always been favored in this state, and there is nothing in the constitutional debates tending to indicate that it was the purpose of the delegates to the convention to reverse or circumscribe the policy theretofore recognized other than to make the exemptions uniform and to limit them to institutions of purely public charity and institutions of education not used for private gain. These kinds of institutions engage in activities which relieve the state and municipalities of burdens which they otherwise would have to assume. As frequently stated by this court, both before and after the adoption of the present Constitution, they render what are properly public services, thus relieving the taxpayers of a portion of their burden and justly entitling the institutions to exemption from taxation. Layman Foundation v. City of Louisville, 232 Ky. 259, 22 S. W. 2d 622; Lloyd Library & Museum v. Chipman, 232 Ky. 191, 22 S. W. 2d 597; Trustees of Widows' & Orphans'

Home of Odd Fellows v. Commonwealth, 126 Ky. 386, 103 S. W. 354, 31 Ky. Law Rep. 775, 16 L. R. A., N. S., 829; Zabel v. Louisville Baptist Orphans' Home, 92 Ky. 89, 17 S. W. 212, 13 Ky. Law Rep. 385, 13 L. R. A. 668. The income derived from their endowments, whether in the form of real estate or other investments, is as necessary to the functioning of charitable and educational institutions as are the grounds and buildings actually used in their activities. If the framers of the Constitution intended to alter the liberal policy long favored in this state by exempting only a portion of the property of such institutions, they surely would have said so in plain and unmistakable language. It is significant that when they dealt with religious societies they were specific and limited the exemptions to "places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country," and "all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto." There was a practical reason for the distinction. Religious societies, unlike charitable and educational institutions, do not perform any function which relieves the taxpayers of a portion of their burden. Furthermore, history informed them of the mischievous consequences of the acquisition and holding of great wealth, especially in the form of land, by churches and religious societies. Soon after the adoption of the Constitution the General Assembly went even further and passed a statute of mortmain, which prohibited churches and religious societies from taking or holding title to real estate in excess of fifty acres. Chapter 200, section 3, Acts of 1893; KRS 273.090. Like abuses had not appeared as the result of the ownership of real estate by charitable and educational institutions. The fundamental principle of constitutional construction is to give effect to the intent of its framers and of the people adopting it. Rouse v. Johnson, 234 Ky. 473, 28 S. W. 2d 745, 70 A. L. R. 1077. In view of the long-settled and liberal policy of the state in exempting from taxation property of charitable and educational institutions and the legislative history in respect thereto, the adopters

of the Constitution must have understood that all property of such institutions was to be exempted.

Aside from the question as to the soundness of the construction heretofore placed on section 170 of the Constitution, all members of the court are of the opinion that it should not now be departed from. In recent years there has been considerable relaxation in the application of the doctrine of stare decisis, and this court has never hesitated in a proper case to overrule its former opinions. The doctrine is not an absolute. It is a judicial creation and within judicial control, but it serves a necessary purpose, stabilization of the law, and should not be abandoned or substantially impaired. Its salutary effect as a stabilizing influence on the law must be preserved. In the recent case of Daniel's Adm'r v. Hoofnel, 287 Ky. 834, 155 S. W. 2d 469, the question was whether the Legislature may, by special resolution, waive the state's immunity from suit and liability from the torts of its officers, agents, and employees. The construction theretofore given to subsection 29 of section 59 of the Constitution—which prohibits the Legislature from passing a special law when a general law can be made applicable—in a number of cases, beginning with Commonwealth v. Haly, 106 Ky. 716, 51 S. W. 430, 21 Ky. Law Rep. 666, was attacked. In declining to overrule its former opinions, the court said [287 Ky. 834, 155 S. W. 2d 471]:

"A full reconsideration of the question has been given in this case. Regardless of what the views of the court as now constituted may be as to the soundness of the construction originally given the Constitution in Commonwealth v. Haly, supra, we are of the opinion that the construction should be adhered to under the doctrine of stare decisis. The maxim or phrase is: 'Stare decisis et non quieta movere', to stand by precedents and not disturb settled points. This wholesome rule is not inflexible or so imperative as to require perpetuation of error, but departure from the policy it declares can be justified only upon substantial grounds. The force of the rule depends upon the nature of the question to be decided and the extent of the disturbance of rights and practices which a change in the interpretation of the law or the course of judicial opinions may create. Cogent considerations are whether there is clear error and urgent reasons 'for neither justice nor wisdom requires a court to go from one doubtful rule

to another', and whether or not the evils of the principle that has been followed will be more injurious than can possibly result from a change. (Cases cited.) And since it is of the utmost importance that the organic law be of certain meaning and fixed interpretation, decisions construing a constitution should be followed in the absence of strong reasons for changing them. (Cases cited.) To change the interpretation of the present constitution which has been consistently adhered to for forty-two years, would be to upset governmental policy followed since the foundation of the Commonwealth 150 years ago.''

The construction given to section 170 of the Constitution in the Midway School case has been repeatedly affirmed and has been acquiesced in for nearly half a century. Property rights have vested on the faith of that construction. Devises of real estate to charitable and educational institutions have been made, and such institutions have invested portions of their endowment funds in real estate in the belief that such property was exempt from taxation. To make it subject to taxation would materially impair its value and in many instances would adversely affect the activities of the institution. No counterbalancing injurious effects resulting from the criticised decisions have been pointed out.

It is finally contended that due to changed conditions these decisions should be overruled even though the original construction of section 170 of the Constitution was correct, and Potter v. Dark Tobacco Growers Co-Operative Association, 201 Ky. 441, 257 S. W. 33, and Taylor v. Westerfield, 233 Ky. 619, 26 S. W. 2d 557, 560, 69 A. L. R. 482, are cited in support of the claim that this court has recognized that change of economic conditions and of social outlook warrant a change of constitutional interpretation. The meaning of a constitutional provision does not change. It means now what it meant when it was adopted, and the public policy declared may not be changed by the Legislature or the courts but only by formal amendment. Changed conditions enter into the equation only as they indicate that the earlier construction was erroneous. The cases cited by appellant do not hold to the contrary. In the Taylor case it was pointed out that the decisions in the cases overruled were wrong when made, and, further, that the erroneous doctrine established no rule of property. The court did say that ''whatever its soundness may

578

have been at one time in the light of the then social outlook, it is no longer sound", but the court was dealing with a public policy it, and not the Constitution, had declared.

The appellant is alarmed by the "abuses, misuses, and monstrous and absurd consequences which have appeared and are present in the City of Louisville." One of the alleged abuses of the tax exemption privilege is "the resort to subterfuge to disguise sales of charitable and educational owners to make the sales appear to be leases and thereby prolong the exemption status for the benefit of the purchaser." No such abuse appears in any of the cases before us, and, as said in Commonwealth v. Trustees of Hamilton College, 125 Ky. 329, 101 S. W. 405, 406, 30 Ky. Law Rep. 1338, "the spirit in which this exemption from the burdens of taxation is allowed cannot be trifled with or evaded by any scheme or device that might defeat the purpose of the exemption."

Appellants' alarm at the unjust burden cast upon the taxpayers of the City by the exemption of large amounts of real estate from taxation appears to be unfounded at present. All of the real estate in the City of Louisville owned by charitable and educational institutions amounts to less than ¾ of 1 per cent. of the assessed valuation of the taxable property. The day may come when the amount of tax exempt real property owned by such institutions will constitute an evil, but the people, no doubt, will then correct the evil by adopting the proper constitutional amendment. This is the only method of changing a constitutional provision. If the original construction of section 170 was correct, then to change that construction would be, in effect, to amend the Constitution, a function not belonging to the courts.

The judgment in each case is affirmed.

The whole court sitting.