## DISTRICT OF COLUMBIA v. FRIEND-SHIP HOUSE ASS'N, Inc.

### No. 11220.

United States Court of Appeals
District of Columbia Circuit.

Argued April 17, 1952.

Decided July 10, 1952.

George C. Updegraff, Asst. Corporation Counsel for the District of Columbia, Washington, D. C., with whom Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, and George F. Lynch, Asst. Corporation Counsel, all of Washington, D. C., were on the brief, for petitioner.

Edgar J. Goodrich, Washington, D. C., with whom Jerome J. Dick, Washington, D. C. was on the brief, for respondent.

Before EDGERTON, WILBUR K. MILLER, and BAZELON, Circuit Judges.

PER CURIAM.

The question is whether respondent's real property is exempt from taxation under D. C.Code 1940, Supp. VII, § 47–801a, as "(h) Buildings belonging to and operated by institutions which are not organized or

operated for private gain, which are used for purposes of public charity principally in the District of Columbia" and grounds required and used for such purposes. Respondent's sole activity is the operation of a residential settlement house, including classes and social activities for adults and children and day care of children. The moderate fees it charges for its services are based on the individual's ability to pay.[1] The majority pay but a portion of the cost of the services they receive, and those who can pay nothing are served free.[2] Respondent's income is derived largely from the Community Chest and other charitable sources. Respondent's officers receive no salary. The compensation of those of respondent's workers who are not volunteers is very modest. In numerous instances it includes board and lodging which is supplied at less than cost.

We think the Board of Tax Appeals was clearly right in finding that respondent's real property is exempt from taxation. Petitioner points out that most of respondent's beneficiaries are not impoverished. But as the Board said, "It is not necessary, in order to qualify as a charity, that an organization confine its activities to the furnishing of the bare necessities of life, namely, food, shelter and clothing. An activity is equally a charity when, as in the case of petitioner, it affords some of the amenities of a decent life to those who are unable to pay anything at all, or the full price thereof * * *" Cf. International Reform Federation v. District Unemployment Compensation Board, 76 U.S.App.D.C. 282, 284, 131 F.2d 337, 339. It is likewise immaterial that respondent receives fees from those who can afford to pay, Catholic Home for Aged Ladies v. District of Columbia, 82 U.S.App.D.C. 195, 161 F.2d 901,[3] or that a few of the beneficiaries could perhaps pay more than they do for the services they get. We need not consider whether respondent's tax status would be different if most of its beneficiaries were well-to-do.

Government Services, Inc., v. District of Columbia, 88 U.S.App.D.C. 360, 189 F.2d 662, does not support petitioner's contention that only organizations "for the relief of the poor" are charitable in a tax sense. Government Services, Inc. "makes profits in that its receipts are in excess of its costs. * * * It has an accumulated earned surplus of about $1,500,000 largely invested in equipment." 88 U.S.App.D.C. at page 361, 189 F.2d at page 663. It sold meals and other services to the public at moderate prices but not below cost. There is small resemblance between that organization and one like respondent which must and does serve, for the most part, below cost, and depends on public benevolence to meet expenses.

Affirmed.

1. Petitioner's analysis of the financial status of 121 families having children in respondent's full-day child care program shows 54 single-income families with an average annual gross income of $3,119.-60 and 67 double-income families with an average total annual gross income of $4,712.85. Roughly one-third of the families had incomes below $3,000.

2. For example: The cost of full-day care per child is estimated at $2 per full day. Fees, where charged, range from $3.50 to $12.50 per five-day week per child. The operating expenses of the day care program totaled approximately $32,250 during 1950 as compared with total fees of about $18,000.

3. The Board observed that "The United Community Services organization [The Community Chest] expected its member agencies to collect fees from recipients of their service to the extent of the ability of the recipients to pay."