Steve BANAHAN, Property Valuation Administrator of Fayette County, Kentucky, Appellant,

v.

PRESBYTERIAN HOUSING CORPORA-TION et al., Appellees.

Steve BANAHAN, Property Valuation Administrator of Fayette County, Kentucky, Appellant,

v.

EMERSON CENTER, INC., et al., Appellees.

Supreme Court of Kentucky.

June 10, 1977.

Glenn McDonald, Louisville, William S. Riley, Asst. Atty. Gen., Kentucky Dept. of Revenue, Frankfort, for appellant.

Joseph B. Murphy, Angus W. McDonald, McDonald, Alford & Roszell, Lexington, for appellees.

William P. Friedlander, Louisville, amicus curiae.

STERNBERG, Justice.

These two appeals present a common issue and will be disposed of in one opinion. The issue is whether the appellees are exempt from ad valorem taxation, pursuant to Section 170 of the Kentucky Constitution, as institutions of purely public charity. The trial judge was of the opinion that the facts of these cases entitled appellees to the constitutional exemption from ad valorem taxes. We concur.

Both the Presbyterian Housing Corporation and the Emerson Center, Inc., were organized as nonprofit corporations, pursuant to the provisions of Chapter KRS 273. Their stated purposes are:

*Presbyterian Housing Corporation*

"a. To provide, on a non-profit basis, housing for low and moderate income families and families displaced from Urban Renewal Areas, or as a result of governmental action, or as a result of a major disaster, where no adequate housing exists for such groups, pursuant to Section 231(d)(3) and Section 236 of the National Housing Act, as amended. Such housing may include facilities for the elderly and handicapped.

b. The corporation is irrevocably dedicated to and operated exclusively for non-profit purposes; and no part of the income or assets of the corporation shall be distributed to, nor inure to the benefit of, any individual."

\* \* \* \* \* \*

"Under Article 3 of the Articles of Incorporation PHC is empowered to do the following:

\* \* \* \* \* \*

c. To do and perform all acts reasonably necessary to accomplish the purposes of the corporation, including the execution of a regulatory agreement with the secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, and of such other instruments and undertakings as may be necessary to enable the corporation to secure the benefits of financing with the assistance of mortgage insurance under the provisions of the National Housing Act. Such Regulatory Agreement and other instruments and undertakings shall remain binding upon the corporation, its successors and assigns, so long as a mortgage on the corporation's property is insured or held by the secretary of Housing and Urban Development.

d. In the event of the dissolution of the corporation or the winding up of its affairs, or other liquidation of its assets, the corporation's property shall not be conveyed to any organization created or operated for profit or to any individual for less than the fair market value of such property, and·all assets remaining after the payment of the corporation's debts shall be conveyed or distributed only to an organization or organizations created and operated for non-profit purposes similar to those of this Corporation; Provided, however, that the Corporation shall at all times have the power to convey any or all of its property to the Secretary of Housing and Urban Development or his nominee."

\* \* \* \* \* \*

"Article 5 of the Articles of Incorporation provides that a majority of the directors of the Corporation must at all times be members of a Presbyterian Church and that membership in the Corporation shall be broadly representative of community interest and professional experience but a majority of the members shall at all times be members of the Presbyterian Church. The affairs of the Corporation are managed by a Board of Directors who serve without compensation.

Article 9 of the Articles of Incorporation provides that so long as the mortgage on the Corporation's property is insured or held by the Secretary of Housing and Urban Development, the Articles of Incorporation shall not be amended without the prior written approval of the Secretary of Housing and Urban Development."

*Emerson Center, Inc.*

"(a) To provide for lower income elderly or handicapped families and persons on a nonprofit below cost basis rental housing and related facilities and services specially designed to meet the physical, social and psychological needs of the aged or handicapped, and contribute to their health, security, happiness, and usefulness in longer living. Lower income elderly persons and families displaced from urban areas or as a result of governmental action shall be given priority where no adequate housing exists for such groups, pursuant to Section 236 of the National Housing Act, as amended.

(b) The corporation is irrevocably dedicated to and operated exclusively for, nonprofit purposes; and no part of the income or assets of the corporation shall be distributed to, nor inure to the benefit of, any individual."

\*    \*    \*    \*    \*    \*

"Article III contains the following provision:

\*    \*    \*    \*    \*    \*

"(d) \* \* \* In the event of dissolution winding up, or other liquidation of the assets of this corporation, its assets shall be distributed to nonprofit and charitable corporations or institutions as shall qualify for exemption under Section 501(c)(3) of the IRS Code of 1954 as may be designated by the trustees to be used for purposes similar to those of this corporation. Provided, however, that the corporation shall at all times have the power to convey any or all of its property to the Secretary of Housing and Urban Development or his nominee."

Each of the appellees is the owner of a multiple-unit apartment complex in Lexington, Kentucky. The construction was financed pursuant to Section 236 of the National Housing Act. The rent is established by joint action of the federal agency and the appellees, at a rate which is much less than the going charge for similar facilities. In fixing the rent rate, no consideration was given to the probability of the imposition of ad valorem taxes. Rentals are fixed at a rate that will provide an income sufficient to pay the operating costs, including interest on the unpaid balance due on the construction loan. To be eligible for a tenancy in either of the projects, a person must be at least sixty-two years of age or physically handicapped, have an income within an established maximum, execute a written lease, and pay the rent regularly (or be evicted).

The 144 apartments owned by the Presbyterian Housing Corporation are known as Amberly Place and consist of one, two, and three-bedroom apartments, which rent for $84, $95, and $102.84, respectively per month. Of the 178 apartments owned by Emerson Center, about 60 are one-bedroom and the remainder are efficiency apartments that rent for $120 and $89, respectively, per month.

Appellant is critical of the fact that the appellees, as they make the mortgage payment of principal and interest each month, are accumulating a larger equity in the buildings and in due time the mortgages will be fully paid and the property will be free of encumbrances. There is no obligation on a nonprofit corporation to operate under the cloud of a mortgage. Hopefully, the mortgages will be, in due time, fully paid and the rents can be adjusted accordingly.

The design and purpose of the subject projects are to provide housing and related facilities for the elderly and the handicapped persons so that they may enjoy living in a suitable environment. Even though there may be, from time to time, some persons living in the project who are not entitled to this benefit, the economic and humanitarian value of the whole project cannot be condemned by a few imposters.

Section 170 of the Kentucky Constitution provides in part that, "There shall be exempt from taxation \* \* \* institutions of purely public charity \* \* \*." The issue presented in not new nor are the arguments novel.

The Kentucky Department of Revenue seeks to add both of these apartment

projects, having a total taxable value in excess of $2 million, to the tax rolls. Appellees vigorously resist.

The landmark case from which our present guidelines are espoused is *Trustees of Kentucky Female Orphan School v. City of Louisville*, 100 Ky. 470, 36 S.W. 921, 19 K.L.R. 1091, 40 L.R.A. 119 (1896). Therein, this court held that the school was entitled to the exemption and that the exemption applied to income-producing property where the income was used for the charitable purpose for which the institution was organized. See also 37 A.L.R.3d 1191.

We must bear in mind that, "It is a settled principle that taxation is the rule and exemption the exception, and immunity from sharing the common burden is allowed only to those who perform duties which the state itself is obligated to discharge. * * *" *Layman Foundation v. City of Louisville, et al.*, 232 Ky. 259, 22 S.W.2d 622 (1929). In other words, exemption from taxation is not favored in law, and claims for exemption are to be strictly construed in the public's favor, but such construction must be a reasonable one. This court, in *Layman Foundation,* supra, went on to say that since the objects of the foundation's charity were not the people of Kentucky and no part of Kentucky's duty was discharged by the foundation, the constitutional exemption from ad valorem taxes was not available to it.

Section 170 of the Kentucky Constitution is meant to foster and encourage benevolences to the Commonwealth of Kentucky and its people, not the showering of an institution's charity on other states or the inhabitants of other states. Also see *City of Louisville v. Presbyterian Orphans Home Society of Louisville,* 299 Ky. 566, 186 S.W.2d 194 (1945).

In *Iroquois Post No. 229 v. City of Louisville,* Ky., 309 S.W.2d 353 (1958), this court again considered the subject question. We found that the Iroquois Post was not entitled to the constitutional exemption because its " * * * principal activities centered around promoting the interests and gratifying the wishes of its own membership. The dispensing of charity appears to be an incidental portion of its program." In the course of the opinion, we said:

"Two basic conditions must be established in order to warrant an exemption from the payment of taxes. First, the institution must itself be a charity and the income from its property must be used to further its charitable purpose; secondly, the property must be employed for a purely charitable purpose. * * *"

In *Commonwealth of Kentucky v. Grand Lodge of Kentucky,* Ky., 459 S.W.2d 601 (1970), the Commonwealth, as here, construed the *Iroquois Post* case to mean that the property must be employed directly in charitable work. We renounced such a narrow construction and, in doing so, said:

"The appellants rely upon language in *Iroquois Post No. 229, American Legion v. City of Louisville,* Ky., 309 S.W.2d 353, to the effect that, to achieve tax exemption, it is not enough that the institution itself be a charity and use its income to further its charitable purposes, but in addition 'The property must be employed for a purely charitable purpose.' The appellants interpret this as meaning that the property must be employed *directly* in charitable work. We think this is a misinterpretation, and that it is sufficient that the ultimate effect of the use of the property is to accomplish the charitable purposes of the institution. That this is so is illustrated by the holding that *income-producing* property of a charitable institution is exempt from taxation. See *City of Louisville v. Presbyterian Orphans Home Society,* 299 Ky. 566, 186 S.W.2d 194. And it is made crystal clear by the statement in the *Iroquois Post* case * * * that for a building to be exempt, charity must actually be dispensed there *or* it must provide 'necessary quarters for an organization whose prime aims and functions * * * (are) of an actively charitable nature.'"

We recently had occasion to again reconsider the subject issue in *Commonwealth ex rel Luckett v. Isaac W. Bernheim Founda-*

*tion, Inc.,* Ky., 505 S.W.2d 762 (1974). In manifesting our philosophy on this issue, we said:

"We do not deem it important that the Foundation has not carried out all of its stated purposes. What is more important is that all of the activities of the Foundation are of a charitable nature.

No case has been called to our attention which requires that a charity have as its objective the fulfillment of basic human needs for food, clothing and shelter to qualify as a charity for purposes of tax exemption under Section 170 of the Constitution.

We are mindful that tax exemption deprives the treasury of revenue which must be replenished from other sources and consequently all claims for tax exemptions should be carefully scrutinized. We do not propose to allow the perpetuation of individual idiosyncrasies in a tax-exempt status under the guise of charity. Nevertheless, we feel that charity is broader than relief to the needy poor and includes activities which reasonably better the condition of mankind. *District of Columbia v. Friendship House Association,* 91 U.S.App.D.C. 137, 198 F.2d 530 (1952)."

It can hardly be said that the purposes for which the Presbyterian Housing Corporation and the Emerson Center exist are not charitable. Their Articles of Incorporation declare that their purposes are, among other things, (1) to operate without distribution of any of its income or assets to members, directors, or officers; (2) to provide housing to low and moderate income families of elderly or handicapped persons; and (3) to cooperate with the Federal Housing Authority.

■ The underlying purpose of the Federal Housing Law, as we understand it, is slum clearance, public safety, public health, and the prevention of crime and juvenile delinquency. With these purposes, the appellees are authorized to cooperate. Hopefully, their efforts may bring forth a reduction in crime and good housing for senior citizens and the handicapped, all to the benefit of the people of Kentucky and the Commonwealth at large.

The elderly are now and long have been one of the prime concerns of this Commonwealth. The Kentucky Commission on Aging (KRS 216.620) and the Public Assistance and Medical Assistance programs of the State Department for Human Resources manifest this continuing concern.

■ The appellees have demonstrated that each is a charitable corporation. Their total income is used solely to continue the operation of the project and the low-cost housing program. The property which is sought to be subjected to the ad valorem taxes is employed for a purely charitable purpose.

The judgment is affirmed.

All concur.